## HARRISON *v.* KRAMER *et. al.*

Applications to set aside a default, are addressed to the grace and favor of the court, and are not granted as a matter of course.

Each case must be determined, to a great extent, upon its own circumstances, and no precise rule can be given, which shall govern the interference of the chancellor, to relieve a party from the consequences of his default.

Relief should never be granted, however, where the default is the consequence of the party's own negligence.

Where in a proceeding in chancery, to declare certain deeds of real estate, fraudulent and void, the respondents by agreement, were required by rule, to answer within sixty days; and a copy of the answers were to be served on the complainant's solicitors at Davenport, Iowa; and where, on the first day of the next term of the District Court, after the time fixed for answering, the complainant moved, no answers having been filed, for a decree *pro confesso;* and where, after the motion was made, but on the same day, two of the respondents filed their answers, which on motion of the complainant, were stricken from the files, and the default of the respondents entered in accordance with the motion of the complainant; and where on the fifth day of the term, the respondents moved to set aside the default, based upon affidavits, from which it appeared, that the attorneys upon whom respondents relied to prepare their answer, resided in Dubuque, a distance of some sixty miles; that said attorneys were unacquainted with the post-office address of the respondents, and could not prepare their answers without a conference with them; that some forty or fifty days after the adjournment of the term of court at which the rule was entered, the attorneys at Dubuque, wrote to the attorney resident in Jones county, for information as to the residence of the respondents, requesting him to have them go to Dubuque; that the attorney in Jones, was also unacquainted with their post-office address, though he knew where they resided, which was some eight or twelve miles from the residence of the attorney; and that he was so engaged, that he could not get them word, nor see them, until some time in July, subsequent to the receipt of the letter from the attorneys in Dubuque, which motion was overruled; *Held,* 1. That the respondents had not shown a reasonable excuse for having made default; 2. That the court did not err in striking the answers from the files, and in refusing to set aside the default.

Where a bill in chancery is taken as confessed, all distinct and positive allegations are to be taken as true, without proof; but if the allegations are indefinite, or the demand of the complainant is in its nature uncertain, the certainty requisite to a proper decree, must be afforded by proofs.

In order to sustain any conveyance, as against either existing or subsequent creditors, it is essential that it be made upon a meritorious or valuable consideration, and *bona fide.*

While every material fact essential to his recovery, should be stated by a com-

plainant, in his bill, it is not necessary to state therein minutely, all the circumstances which may conduce to prove the general charge.

A court will pay attention, and give credit to its own records and proceedings, without further testimony to establish them, than the production of the proceeding itself; and especially is this true, where such proceedings have taken place in the same cause, or in another cause between the same parties, or those under whom they claim.

Where a complainant in his bill, refers to such records and proceedings, and asks that they may be taken as a part thereof, they stand as exhibits, to which he can refer, and upon which he may rely, upon the final hearing, without proof of their genuineness, unless they shall be in some manner denied or impeached.

Where it appears from a decree *pro confesso*, that the court below was satisfied that all things necessary to entitle the complainant to the relief sought, were proved, the appellate court will not presume that there was a want of evidence to make those things certain and definite, which might by the bill unaided by proof, appear uncertain and indefinite.

Where a decree recites that certain matters essential to its rendition, were made to appear, the appellate court will presume, that they were made to appear in the proper manner, and that the court rendering such decree performed its duty.

Where a bill in chancery to set aside, and declare fraudulent and void, certain deeds to real estate, against a father and his son, and a third person, to whom the son conveyed, alleged that at the time the land was entered by the father in his own name, he was a debtor of the complainant; that before a judgment was rendered on the debt, in favor of the complainant, the father without any good or valuable consideration, conveyed the land to the son; that at the time of the rendition of the judgment, and for a long time before, the father lived on the land, cultivated it as a farm, paid the taxes, and used and sold the crops raised thereon; that the deed from the son to the third person, was without any consideration, and was fraudulent and void against complainant; that the father remained in possession, long after the deed to the third person was executed; and that such third person had admitted that he held the title thereto, for the benefit of the father; and where the bill referred to the records and proceedings in the cause in which the judgment against the father was rendered, and made them a part thereof; and where the decree *pro confesso* recited that it was made to appear, that the judgment was rendered as charged: that an execution issued, was levied, the land sold, and the sheriff's deed made, at the time and under the circumstances set forth in the bill; that the father had fraudulently conveyed the land to the son, and the son to the third person; that as against the complainant, said deeds were fraudulent and void; and that the land was held by the third person in fraud of the rights of complainant; *Held*, 1. That the bill averred with sufficient distinctness, that the complainant was a creditor of the father, at the time of the conveyance to the son; 2. That the bill did show, that at the time of the conveyance to the son, the father was largely indebted; 3. That it sufficiently appeared from the bill, that the convey-

ances were made in bad faith; 4. That the bill authorized the decree rendered.

Where the purchaser of the equitable interest of the execution defendant in real estate, files his bill in chancery, to perfect his title, or to set aside a conveyance of the property by the debtor to third persons, which he alleges to be fraudulent, it is not necessary to aver and prove, that an execution had been returned *nulla bona*, prior to the levy upon and sale of the equitable interest of the execution defendant, purchased by the complainant.

Section 1947 of the Code, however much it may operate to protect a *bona fide* purchaser, without notice, who may take title after the twenty days therein named, cannot protect one who purchases with *actual* notice, or one who purchases with a fraudulent intention to defeat the title of the person who purchased under the execution.

## *Appeal from the Jones District Court.*

BILL in chancery to set aside and have declared fraudulent two deeds of certain real estate. As shown by the bill, the complainant in September, 1851, obtained a judgment in the Jones District Court, against the respondent, Adam Kramer, for some fourteen hundred and sixty dollars. On this judgment an execution issued, and by virtue of it, the interest of the said Kramer, in the land in controversy, was sold to complainant for the amount of said judgment, interest and costs, on the fourteenth of February, 1852, and on the 10th of November, 1854, he procured a sheriff's deed therefor. Prior to this judgment, Kramer conveyed said land to his son John, who afterwards, on the 6th of May, 1854, conveyed the same to John Graham. The two Kramers and Graham are made parties defendant. The bill charges said conveyances to be fraudulent and void, and the prayer is, that they may be so declared as against complainant, and that his title to said lands may be made perfect, by having the said Graham convey to him.

This bill was filed prior to the April term, 1856, and at that term, the defendants appeared, and by agreement, a rule was entered that they answer within sixty days, a copy of the same to be served on complainant's attorneys at Davenport, Iowa. On the first day of the September term, 1856, no answer having been filed, complainant moved for a decree *pro confesso*. After this, but on the same day, John

Kramer and Graham, filed their answers. Complainant moved to strike said answers from the files, because they were not filed in time, were filed without the leave of the court, and because no copies were furnished complainant's solicitors. This motion was sustained, and the default of respondents entered, in accordance with complainant's motion. Afterwards, on the 5th day of that term, respondents filed affidavits, accompanied by the said answers, to set aside said default, which application was overruled, and a decree *pro confesso* was then entered. The material parts of the decree, as well as the other allegations of the bill, will be found sufficiently referred to in the opinion. Respondent appeals.

*Smith, McKinlay & Poor*, and *W. J. Henry*, for the appellants.

The deed from John Kramer to John Graham, was dated 6th May, 1854, and filed for record 8th of May, 1854; more than one year after the sheriff's sale, and was more than six months before the making of the sheriff's deed. It will be observed that there is no pretence in the bill, that Adam Kramer was indebted to the plaintiff at the time he made the deed to his son. This is absolutely necessary, even though the conveyance was voluntary and without consideration. See Willard's Equity, 232, 233, 235, and authorities there cited.

It is not alleged, and not proved, for there is an entire absence of both allegation and proof, that an execution was ever issued and returned *nulla bona* against Adam Kramer. This should have been done before any relief could be had, and before the court would undertake to inquire into the consideration and validity of deeds made to his son. See *Brinkerhoff* v. *Brown*, 4 Johns. Ch. 675; *Star* v. *Rathbone*, 1 Barb. 70; *Manchester* v. *McKee*, 4 Gilm. 511.

It is not pretended by any charges in the bill, that there was any intent to defraud on the part of Adam Kramer, of John Kramer, or of John Graham. It is only alleged that the deeds are without consideration, fraudulent and void as to creditors. The allegation that the deeds are void and

fraudulent, is only alleged as a consequence resulting from the want of consideration. This is a consequence which by no means necessarily follows. If Adam Kramer was not in debt at the time the deed was made, or if he was only in debt to a small amount, then he had a perfect right to make the deeds. It should be positively alleged in the bill, and proved in some way, that the indebtedness sued on existed at the time that Adam Kramer conveyed to his son. Without this allegation, the court cannot infer that the deed was fraudulent.

The bill in this case was taken *pro confesso*; but to entitle the plaintiff to relief, it should appear from the bill, that a case was made out. For instance, it should show that Adam Kramer was in debt at the time he made the deed to his son. It should show that an execution was sued out against Adam Kramer, and returned *nulla bona*. It should show that the transaction between Adam Kramer and John, and between John and Graham, were in bad faith. These facts should all be charged in the bill; and where the proof consists of documentary evidence, this evidence should be filed in the case. See 4 Hen. & Munf. 476, cited in note to page 578 of 1 Daniell's Chancery Pr. See other authorities there cited. *Peggs* v. *Davis*, 2 Blackf. 281.

The sheriff in this case, levies upon property which, according to the statement of the bill, was held in the name of John Kramer, at the time it was levied upon. The bill states that the property was bid off for sufficient to satisfy the judgment and costs. If this property had been in the name of Adam Kramer, during all this time, the sale would have extinguished the lien of the judgment, or rather it would have been extinguished after the time of redemption had run out, and twenty days thereafter. See Code, § 1947. Adam Kramer could have made a deed to Graham perfectly discharged from any lien created by the judgment, and disincumbered of the sheriff's sale after that time. If Adam Kramer could have done this, no good reason is perceived why John Kramer could not have done the same thing. The sheriff had no more right to sell the property of John Kra-

Harrison v. Kramer et al.

mer, than he had to sell that of any other individual, to satisfy this judgment. If he could find no property belonging to Adam Kramer, he should have returned the execution *nulla bona ;* and then the plaintiff might have filed a creditor's bill, charging fraud—setting forth that Adam Kramer was in debt, at or before the conveyance to his son; the intent to defraud, the return of the execution, and charging that Graham had bought without consideration, with intent to defraud, &c. The case would have been *prima facie* made out on the face of the bill. As it is, no case is made out, even giving the most liberal construction and intendment to every averment contained in the bill; and there are several important averments in the bill which are not sustained by proof.

There is no charge in the bill to the effect that Adam Kramer was not a man of large property, at the time he made the conveyance to his son. It does not appear but that he may have been wealthy, and but that his indebtedness may have been small. It would be going quite far enough for the court to infer fraud from these facts, if plainly and distinctly charged and admitted. In fact the court will plainly see from the pages of Willard's Equity, above cited, that it by no means follows that a conveyance by a father to his son, is void, even though he is indebted at the time, and though he may be a man of limited means. It is generally conceded to be a question for the jury, even in such cases, and that the absolute presumption does not attach, except that the circumstances are extreme and strong. The entire absence of all charges as to the condition and circumstances of Adam Kramer, at the time of making this deed, leaves an absence of all equity in this bill. The court will not draw inferences of fraud from its own imagination, where there are no facts charged which will warrant it.

There is another view of this case which is worthy of consideration. This bill was taken *pro confesso*, after an answer had been put on file. The answer was ordered to be taken off from the files; which was filed before default entered. The answer goes to show that the deeds to John Kramer and

to Graham, were both for valuable consideration; that there
was a meritorious defence. We say it was in time, if filed
before the motion for default was decided. The court will
not undertake to deprive a party of the right to defend, turn
him out of his real estate, without even an opportunity of
examining the deeds and title papers under which he holds.
If the plaintiff seeks such a remedy, to be obtained in such
a manner, he should have at least, obtained copies from the
records of the county, that the court might have some docu-
mentary evidence, something more than mere loose allega-
tions in the bill as to the real facts and circumstances of the
case. This decree was a perfect strike in the dark. The
decree was entered irregularly, without the previous steps
necessary thereto, having been taken. 1 Daniell's Chancery
Practice, 578, note, and the authorities there cited; same
book, page 570, *et seq.*

*Whitaker & Grant*, for the appellee.
The error assigned is the refusal of the court to set aside
the default and allow an answer to be filed. This was a
matter of discretion with the court, and is no ground what-
ever for error. *Cook* v. *Miller*, 11 Illinois, 613; *Brink* v.
*Morton*, 2 Iowa, 411. No appeal lies for the refusal of the
court to open a former decree, because it is a matter resting
in the sound discretion of the court below. *Brockett* v.
*Brockett*, 2 Howard, 240. Where the defendant neglected
to answer a bill in chancery, agreeably to the rules of the
court, and the bill was, on that account taken as confessed,
and a decree made thereon, it was held, that the cause was
not appealable, though the defendant had not neglected to
appear. *Hart* v. *Strong*, 15 Vermont, 377. After an answer
has been filed, and replied to, and the cause set down for
hearing, the defendant failed to appear at the hearing, and a
decree was rendered against him by default, held, that such
a decree was not the subject of appeal. *Sands* v. *Hildreth*,
12 Johns. 493. A decree by default, cannot be the subject
of appeal. *Kane* v. *Whaluck*, 8 Wendell, 219; *Ringold's
Case*, 1 Bland, 5, 12. The case in Bland, is a long history of

appeals and writs of error, and cites many of the old cases both at law and equity. A refusal of the chancellor to vacate an order taking the bill as confessed, cannot be the subject of appeal. *Rowly* v. *Van Berthayn*, 18 Wendell, 319. "No appeal from a decree *pro confesso*." *Murphy* v. *A. M. S. Co.*, 25 Wendell, 249.

But if this was a cause in which an appeal would lie, there is no cause for error. There was no good reason, no just cause assigned, why the answer was not filed. It was not filed from gross carelessness—a total neglect of the business by both attorney and client.

It does not appear from the bill, when the claim accrued on which the judgment was rendered. Reference is made by this petition, to all the proceedings in the original cause on file in said Jones District Court, which the appellant neglects to bring here. And against his neglect, everything is presumed to be rightly done. Where a party refers to the proceedings of the same court, he never attaches copies to his bill, because the court takes notice of its own proceedings. Courts will take notice of what ought to be generally known within the limits of their jurisdiction. 1 Greenleaf, § 6, last clause. The record itself is only produced, when the cause is not in the same court where the record of it is. 1 Greenleaf, § 502. Where a domestic record is put in issue by the plea, the question is tried by the court, though it is a question of fact. The reason is, that the judges can themselves have an inspection of the very record. 1 Greenleaf, § 502, note 3. We have never known a court to be furnished in pleading, with a copy of its own record.

The citation from the Code, (§ 1947,) is just the reverse of its meaning. The allegation, that there is no pretence in the bill, that Adam Kramer was indebted to the plaintiff at the time he made the deed to his son, is not true. The original bill and proceedings which the appellant wants to bring here, show the indebtedness to have accrued years before the deed from Adam to John Kramer.

We have not Willard's Equity, but it nowhere lays down any such doctrine, as that referred to, if it were applicable

to this case. A voluntary gift to a son, where a father is not in debt, is binding in favor of the son, as against subsequent creditors, but a voluntary conveyance, *with intent to defraud any creditors*, is void as to both prior and subsequent creditors. It is not alleged, says the brief, and not proved. What has a defendant by default, to do with the proof? If he had brought up the proof, which is on the files below, the court could determine the fact as well as the counsel, that an execution was issued, and returned *nulla bona*, &c. This is altogether outside of this cause. If the defendants wanted to show that any fact was wanting, necessary to give the court jurisdiction, he should have answered and shown it. In the absence of even a trial, this court would presume in favor of the jurisdiction of the court below, where there is an appearance. A default admits the plaintiff's cause of action, even at law. This is a decree by confession. A default in equity is, where the defendant never appears, or after appearance, he has neglected to answer; it is a decree *pro confesso*. Adams' Equity, 374, margin. The argument of the appellant proceeds on the assumption, that this is simply a creditor's bill filed before execution, whereas, it is a bill by a purchaser under a judgment, to cancel a fraudulent conveyance. It is not a bill to subject property to execution, which could not be reached by execution, but it is a bill to protect a purchaser under a judgment against the effect of a fraudulent conveyance, which is recorded, and a cloud on his title. There is, however, no such rule as that laid down by the counsel, nor do the authorities to which he refers us, say so..

In *Brinkerhoff* v. *Brown*, 4 Johns. C. 675, the rule is laid down, that "the creditor must show a *judgment* at law, which creates a lien on the estate, for which he seeks relief." In *Star* v. *Rathbone*, 1 Barbour, 70, the bill was for an injunction, in relation to personal property, which the court refused, because he might sell it. The case of *Manchester* v. *McKee*, 4 Gilman, 511, was evidently cited without being read, for in the marginal note are these fatal words, to the plaintiff's case: "A party against whom a bill has been taken for confessed, cannot assign for error, that the proofs

do not sustain the bill." The court in that case, decided that there was no such thing as an equitable attachment, and that a judgment by attachment does not give jurisdiction in *personam*, so as to make such a judgment evidence of debt generally. The court, in *Manchester* v. *McKee*, refers to *Beck* v. *Burdett*, 1 Paige, 305, which the counsel against us, could not have examined. "There are," (says the chancellor,) "two classes of cases, where a plaintiff is permitted to come into this court for relief, after he has proceeded to judgment and execution at law, without obtaining satisfaction of his debt. In one case, the issuing of the execution, gives the plaintiff a lien on the property, but he is compelled to come here for the purpose of removing some obstructions fraudulently or inequitably interposed to prevent a sale on the execution. In the other, the plaintiff comes to obtain satisfaction of his debt out of property of the defendant, which cannot be reached by execution at law." In the first case, the plaintiff may come into this court for relief, immediately after he has obtained a lien on the property by the issuing of an execution, &c. *Beck* v. *Burdett*, 1 Paige, 308. The general principle is, that where a creditor seeks the aid of a court of equity, to subject property fraudulently conveyed away, a *judgment* must be first obtained, before any land so conveyed can be reached, and in pursuit of personal property, a *fi. fa.* must first have been issued. *Breveley* v. *Stuley*, 5 Gill & Johnson, 432. The counsel on the other side, have confounded creditors' bills against personal property, with those against real estate. We should multiply cases on this point, but the appellants' own authorities do not go any farther, and having fully investigated the question before this court, some years ago, we know that we are right.

Now we suppose, we need not produce a great deal of authority to show, that a court of equity protects a purchaser against fraudulent conveyances. See 1 Story's Equity Jurisprudence, as to fraudulent conveyances, and the rights of subsequent purchasers, after such fraudulent conveyance, (§§ 425, 426,) and the same authority, as to the cancelation of fraudulent instruments, section 700.

By the laws of our state, the equitable and trust interest of parties may be sold on execution. The judgment is a lien on them. It is the first time we have learned a doubt expressed in our state, that a creditor could not levy on the property of his debtor, fraudulently conveyed, sell it, and that the purchaser could not file his bill to cancel the fraudulent conveyance as a cloud on his title. See 1 Stockton, 160.

Reference is made to 4 Henry & Munford, 476. This is a report of a trial in the court below, a chancery court, not an appeal. The court say: " That on a bill as confessed, the plaintiff cannot take a final decree without filing his documents." In this court, on appeal, the court presumes it was done.

The appellants cite, *Brown* v. *Hollenbeck*, 2 Greene, 319. Why? That was a case where an answer was regularly filed, and was on the file according to the rules of the court, and the plaintiff took judgment by default, without noticing the answer. The cases from 2 Paige, 332, and 3 Paige, 408, are directly in conflict with the principle which the appellant seeks to establish. But our authorities already cited, are too numerous and too conclusive, to allow this court to go behind the default. These cases conclusively establish, that no appeal lies, no errors can be shown, where the defendant below suffers a default. If the court had jurisdiction of the cause, and the parties, there is an end of the cause. Reasons for setting aside the default, could be addressed alone to the court below. If ever there was a case in which the defendants allowed a default from pure carelessness, this is one of them.

Since writing this brief, we have, in looking up another question before the court, examined *Smith* v. *Espy*, 1 Stockton, (N. J.,) 160, which was a bill precisely similar to this. That was a bill by a purchaser, under a judgment, against a debtor and his assigns, to set aside a fraudulent conveyance, where the property for which the bill was brought, was sold on execution. The whole case is worthy of perusal by the court. The fraudulent conveyance was made in 1846. The

judgment was rendered in 1849, for all that appears, on a subsequent debt. The court say: "A deed fraudulent as to judgment creditors, may be impeached by a purchaser holding a conveyance under that judgment, but such purchaser stands in no better situation than the judgment creditor, filing a bill to avoid the alleged fraudulent deed."

WRIGHT, C. J.—To reverse this decree, appellants rely upon two grounds. The first is, that the court below erred in striking their answers from the files, and refusing to set aside the default. In the second place, it is urged, that complainant's bill, though unanswered, did not authorize or justify the decree rendered.

To sustain the first position, we are referred to section 1827 of the Code, which provides that a default may be set aside on such terms as the court may deem just, but not unless an affidavit of merits be filed, and a reasonable excuse be shown for having made such default. In this case, the only question to be considered is, whether a reasonable excuse is shown for having made default, for in other respects the affidavits fully comply with the requirements of the law. Complainant insists that this court cannot review the action of the District Court, in granting or refusing an application of this character. Without determining this question, it is sufficient to say that we see no sufficient reason for interfering with the discretion exercised in the case before us. Such applications are addressed to the grace and favor of the court, and are not granted as a matter of course. Each case must be determined to a great extent, upon its own circumstances, and no precise rule can be given, which shall govern the interference of the chancellor to relieve a party from the consequences of his default. The relief, however, should never be granted when the default is the consequence of the party's own negligence. *Wooster* v. *Woodhull,* 1 Johns. Ch. 538; *Parker* v. *Grant,* Ib. 630; *Rucker* v. *Howard,* 2 Bibb, 166. And in view of these principles, we repeat, that we cannot say that respondents made a sufficient showing to entitle them to have the default set aside. According to the rule,

Harrison v. Kramer et al.

they were to answer within sixty days. They did not answer till long after that time, and then not until complainant had filed his motion for judgment for want of an answer. From this showing, it appears that their attorneys, or those upon whom they relied for drawing their answers, resided in Dubuque, a distance of some sixty miles; that said attorneys were unacquainted with the post-office address of respondents, and could not prepare their answers without a conference with them. Some forty or fifty days after the adjournment of the term, at which the rule to answer was entered, their attorneys wrote to the resident attorney for information as to the residence of said respondents, requesting him to have them go to Dubuque, but he also was unacquainted with their post-office address, though he knew where they resided, which he says was some eight or twelve miles from his residence, and that he was so engaged that he could not get them word, nor see them until some time in July subsequent to the receipt of the letter. In addition to these averments, there are some general statements that affiants believe that due diligence has been used. By such general averments we cannot be governed, but must look alone to what has been done. Now, these attorneys were present and consented to the entry of the rule to answer. The parties were also there; one of the attorneys resided all the time in the same county. It was understood that attorneys residing sixty miles distant, were to draw the answers, and this they could not do, without the presence of their client. They separate, however, neither attorney knowing the post-office address of his client. After this, the respondents are entirely inactive, and do nothing towards filing their answers as required. Some ten or twenty days before the expiration of the time, a letter is written, inquiring for respondents, and the attorney to whom it is addressed, not knowing their address, fails to inform them that they must go to Dubuque. He knew where they resided, however, and yet with the knowledge that the time for answering had nearly expired, he takes no efficient steps to advise them that they were required at Dubuque. He does see them, however, in July,

some thirty days after the answers should have been filed, and still there is delay until September, when court convened. And even then their answers are not filed until complainant moves for a default. If such a showing can be regarded as a *reasonable excuse* for having made default, within the meaning of the Code, then we must acknowledge that we do not know what excuse would not be sufficient. There appears to us to have been a want of proper attention to what was required of them, on the part of both counsel and clients. To hold the respondents answerable for the consequences resulting from such want of attention, may operate hardly in this particular case, but it is better so, than to allow a hard case to make either a bad law, or a bad precedent. In *Brown* v. *Hollenbeck*, 2 G. Greene, 318, referred to by appellants, the defendant's answer was filed within the time required by the rules of the court, and on the day previous to that on which judgment by default was entered. The distinction between that case and the one before us, is too apparent to require further comment.

Again; the fact that the answers were filed before the motion for judgment by default was decided, could not of itself deprive the complainant of his right to such judgment. At any time after the expiration of the sixty days, complainant was entitled, in the absence of any sufficient excuse for respondent's failure to answer, to a default, and after he had by motion claimed this right, it was the respondent's duty to satisfy the court of the sufficiency and reasonableness of his excuse. A court might be satisfied with a less showing where the answer is exhibited before the entry of the decree, than where it comes in after; but there must be in either case, a reasonable excuse for the default, and the filing of the answer alone is not sufficient. Such a reasonable excuse, does not appear in this case.

We then come to the consideration of the second consideration made by appellants, and under this head several objections are made, which we will proceed to notice in the order presented.

Before doing so, however, it is well to settle and consider

some general rules which may guide us in determining the questions raised.

Where a bill is taken as confessed, we understand that all distinct and positive allegations are to be taken as true, without proof, but if the allegations are indefinite, or the demand of the complainant is in its nature uncertain, the certainty requisite to a proper decree must be afforded by proof. *William* v. *Corwin*, Hopk. 471; *Marshall* v. *Tenant*, 2 J. J. Marsh. 155; *Pegg* v. *Davis*, 2 Blackf. 281; *Platt* v. *Judson*, 3 Ib. 235; *Fellows* v. *Shelmure*, 5 Ib. 48; *Landon* v. *Ready*, 1 Sim. & Stuart, 44; *Stroblet* v. *Lovejoy*, 8 B. Mon. 135.

In the next place, we remark, that we understand that it is essential, in order to sustain any conveyance as against either existing or subsequent creditors, that it shall be *bona fide*. In other words, whether a conveyance be fraudulent or not, must depend upon its being made upon a good consideration and *bona fide*. It is not sufficient that it be upon a good consideration or *bona fide*. It must be both, and by a good consideration as here used, we mean one that is either meritorious or valuable. It is true, that " there is nothing inequitable or unjust in a man's making a voluntary conveyance or a gift, either to a wife or child, or even to a stranger, if it is not at the time prejudicial to the rights of any other persons, or in furtherance of any meditated design of future fraud or injury to other persons.

If there is any design of fraud or collusion, or intent to deceive third persons, in such conveyances, although the party be not indebted, the conveyance will be held utterly void, as to subsequent, as well as present creditors; for it is not *bona fide*." Story's Eq. Juris. §§ 353, 356.

Again, we understand, that while every material fact essential to his recovery should be stated by a complainant in his bill, yet it is not necessary to state therein minutely all the circumstances which may conduce to prove the general charge. "Thus, for example, if a bill is brought to set aside an award, bond or deed, for fraud, imposition, partiality or undue practice, it is not necessary in the bill to charge every particular circumstance; for that is a matter of evidence,

every part of which need not be charged." Story's Equity Pleadings §§ 28, 252; 1 Daniell's 412, note 1, and the authorities there cited. *De Louis* v. *Meek*, 2 G. Greene, 55.

A court will also pay attention and give credit to its own records and proceedings, without further testimony to establish them, than the production of the proceeding itself; and especially is this true, where such proceedings have taken place in the same cause or in another cause, between the same parties or those under whom they claim. Under our practice, the party wishing to use such records and proceedings, produces them on the hearing, without proof of their genuineness. And where by his bill, he refers to such records and proceedings, and prays that they may be taken as a part thereof, they stand as exhibits, to which he can refer, and upon which he may rely on the final hearing, without proof of their genuineness, unless they shall be in some manner denied or impeached.

And finally, where from a decree *pro confesso*, it appears that the court below was satisfied that all things necessary to entitle the complainant to the relief sought, were proved, this court will not presume that there was a want of evidence to make those things certain and definite, which might by the bill, unaided by proof, appear uncertain and indefinite. In some instances, it would be the duty of the court, before rendering such a decree, to refer the matter to a master, to take an account or testimony, or the court might on its motion, continue the cause for testimony, by depositions to be heard at a subsequent term. Where this is not done, however, and the cause is heard at the same term, and the decree recites that certain matters essential to its rendition were made to appear, the court will presume that they were made to appear in the proper manner, and that the court rendering such decree, performed its duty. *Grubb* v. *Crane*, 4 Scam. 153. Having thus briefly stated what we understand to be some of the principles applicable to the case before us, we proceed to consider the objections to complainant's bill, and the decree of the court below.

And these are, that the bill does not aver with sufficient

distinctness, that the complainant was a creditor of Adam Kramer, at the time of the conveyance to the son,—that it does not show that the father was at the time largely or otherwise indebted—that it nowhere appears that the transaction between the father and son, and the son and Graham, were in bad faith—and finally, that it does not show that an execution had been issued and returned *nulla bona*, before the levy upon and sale of this land.

It may be conceded, that the bill does not aver, in so many words, that complainant was a creditor of the father at the time of the conveyance to the son. It is averred, however, that the land was entered by the father in his own name, that at the time, complainant was a creditor; that after the conveyance, the father was sued, and judgment obtained in favor of complainant, but whether upon the debt existing at the time of the entry, is not distinctly stated. But it is averred, that after the entry, and before the judgment, without any good or valuable consideration as against his creditors, the father conveyed to the son ; that at the time of the judgment, and for a long time before, he lived on said land, cultivated it as a farm, paid the taxes on the same, and used and sold the crops raised thereon. It is also averred, that the deed from the son to Graham, was without any consideration, and was fraudulent and void against petitioner; that the father remained in possession long after the deed was made to Graham, and that he, (Graham,) has admitted that he held the title thereto for the benefit of Adam Kramer. It is then distinctly averred, that the deeds from Adam to John, and from John to Graham, are void as against complainant; that they are fraudulent for want of consideration as against him, a creditor of the said Adam, when he made the entry, and are a cloud upon his title. By the bill also, the complainant refers to the records and proceedings of the cause in which judgment was rendered against Adam Kramer, as on file in that court, and makes them a part of his petition. In addition to all these things, the *decree* recites that it was made to appear to the court, that the judgment was made as charged ; that an execution issued, was levied, the land sold, and the

sheriff's deed made at the times and under the circumstances set forth in the bill; that Adam Kramer had fraudulently conveyed said tract of land to John, and John to Graham; that as against the complainant, said deeds were fraudulent and void; and that said land was held by said Graham, in fraud of the right of said complainant.

Now, if the bill was subject to the charge of indefiniteness and uncertainty, we think the objection entirely fails when we look to the decree and bear in mind the presumption that arises from what is therein stated. But by the bill the charge of fraud is clearly and distinctly made, and it is as clearly stated, that the conveyances were made without any consideration to support them, and were, therefore, fraudulent and void as against complainant. Suppose these averments had been admitted by the answers of respondents, what difficulty would there have been in rendering a decree in accordance with the prayer of the bill. It appears to us, that there could have been none. And is there any more difficulty where the bill is taken for confessed for want of an answer, and especially when the decree recites that these matters were made to appear to the court. How they were made to appear, it is true, is not shown. It seems that the court heard the cause at the same term, without referring it to a master or continuing it for taking testimony. To this course, we can see no objection. And having thus heard it, we are bound to presume, in the absence of any showing to the contrary, that the testimony was sufficient, and that those things were *properly* shown and made to appear, which are recited in the decree. They may have been made manifest by the records and proceedings in the original cause, which are referred to and made a part of the bill, but which the appellant has not brought up with the record now before us. But whether in this method or some other, it is sufficient to say, that the decree does clearly show that the alleged conveyances were shown to be fraudulent and in fraud of complainant's rights. This reference to the bill and decree, disposes of all the objections stated, except the one that the bill does not aver, nor is there anything to show, that an execu-

Harrison v. Kramer et al.

tion had been returned *nulla bona*, prior to the levy upon and sale of this land. However the rule on this subject may be, in the case of the ordinary bill filed by the creditor to discover and make subject to the payment of his debt, the equitable assets of the debtor, is such averment and proof necessary where the execution has been satisfied in whole or in part by a sale of such equitable interest, when the purchaser comes into court to perfect his title or to set aside a conveyance of the property by the debtor to third persons, which he alleges to be fraudulent?

We think not. By our law, a judgment is a lien upon the real estate of the defendant, and by real estate is meant all right thereto, and interest therein, *equitable* as well as legal. Sections 2485, 26.

Any property of the defendant, except such as is exempt from execution; and by property is meant real, as well as personal property or estate. Sections 26, 1903, 1904. According to these provisions, the equitable interest of a defendant in land or real estate, is as much subject to execution and sale, as this legal interest or estate. The creditor has his election, in the first instance, to levy upon and sell either. He does not in fact, need the aid of a court of equity, to enable him to subject the equitable estate to his judgment. If he elects to proceed with his execution and sell the property, he purchases at his own risk, whatever interest the defendant may have in the property. When he seeks to draw to the equitable interest so purchased, the outstanding legal title, if he shall fail, he must ordinarily suffer the consequences. We do not say, that he may not after the judgment, file his bill and have the title settled, before selling. This we think he may do, but he is not bound to settle it in advance, but may sell under his execution, become the purchaser, and if there is no redemption, then file his bill and quiet his title. And in such a case, it is not necessary to have a return of *nulla bona*, before levying upon and selling the equitable interest.

Nor do we say, that when he has thus levied, the person holding the legal or adverse title, may not file his bill and

Harrison v. Kramer et al.

enjoin the creditor from interfering with his property until the title is settled.   We have no doubt but that this may be done.

Nor when it is said that a judgment is a lien upon the equitable as well as the legal interest of a defendant, do we wish to be understood as holding that such lien would affect the legal title of one who held the land *bona fide*, without notice of such equity.

But when, as in this case, the person holding the legal title, is charged and proved to have obtained it in bad faith, with full notice of the rights of creditors, we think the lien continues; and that the creditor may sell such property, and file his bill, after his purchase and the expiration of the time for redemption, without showing a return of *nulla bona* prior to his levy.   *Frakes* v. *Brown*, 2 Blackf. 295.

Again, and finally, it is claimed, that the Code gives to the purchaser of real estate on execution, only twenty days after the expiration of the full time for redemption, to place his deed upon record; and that the sale in this case being made in February, 1852, and the deed not being recorded until November, 1854, Graham's rights could not be affected by such deed.

The section of the Code relied on, is as follows: " The purchaser of real estate on a sale on execution, need not place any evidence of his purchase upon record until twenty days after the expiration of the full time of redemption.   Up to that time, the publicity of the proceedings is constructive notice of the rights of the purchaser, but no longer."   Section 1947.   However much this section might operate to protect a *bona fide* purchaser without notice, who might take title after the twenty days therein named, it certainly cannot protect one who purchased with *actual* notice of the rights of the purchaser under the execution, or one who purchases with a fraudulent intention to defeat such execution purchaser's title.   In this case, as already shown, the averments are abundant that Graham was a fraudulent purchaser; and it is clearly stated that he has admitted since his purchase, that

he held the title for the benefit of Adam Kramer. If these things be true, then the failure of complainant to have his deed recorded within the time limited, cannot enure to the benefit of Graham.