## THATCHER v. HAUN, *et al.*

1. DEFAULT: RULE DAY AND ANSWER AFTER. When a party is ruled to answer by a day named, and for his non-compliance has a good and valid excuse, he is not thereby released from answering *after* that time, and before the next term (if the rule day extends into vacation,) unless for such continued default he has sufficient justification.

2. SAME. A default which is the consequence of the neglect of the party against whom it is rendered should not be set aside on his application.

3. SAME: ANSWER. An application to set aside a default granted for want of an answer, should be accompanied by an answer, or some sufficient excuse for not presenting the same.

4. PETITION FOR FORECLOSURE: JOINDER OF CAUSES OF ACTION. The original petition asked for a foreclosure of a mortgage. An amended petition made complainant's assignor a party, and set out a former sale of the mortgaged premises by summary foreclosure to such assignor, an agreement by such assignor to convey said premises to the complainant; that there was a mistake in the description thereof; that the respondents claim that such summary foreclosure and sale were

invalid, and prayed that the title might be quieted, the mistake correct-
ed, and the equity of respondents be cut off, and that if the sale be held
invalid and the petitioner not entitled to that relief, that an account
might be taken and a decree of foreclosure entered in the usual form:
*Held*, That there was no improper joinder of parties or causes of ac-
tion in the original and amended bill when considered together.

5. BILL PRO CONFESSO. It is not necessary to sustain the allegations of
a bill taken *pro confesso* by evidence.

6. REPEAL. When a statute is repealed it is to be considered as if it
never existed, except as to such parts as are saved by the repealing
statutes.

7. SAME. The repeal of a statute under which a suit is pending abates
the jurisdiction, unless provided for by a saving clause.

8. TAKING EFFECT OF A STATUTE. The act concerning mortgages, approv-
ed February 25th, 1858, took effect on the twentieth day after the last
publication thereof—that is, on the twentieth day after the 27th day
of February, A. D. 1858; and a sale made by summary foreclosure on
the 6th day of March, 1858, was not affected by the statute. Code of
1851, § 21. LOWE, C. J., dissenting.

*Appeal from Cedar District Court.*

MONDAY, OCTOBER 21.

WILLIAM G. HAUN, on the 1st day of July, 1852, made his
mortgage on certain parcels of real estate, to secure his
creditor, Mary A. Milliken, in a note of $8262, that day
given to her, due five years from date. The note for this
sum and the mortgage, were assigned by the payee and
mortgagee to Samuel Milliken, who, on the 28th of January,
1858, placed the same in the hands of the sheriff of Clinton
County, in this State, for foreclosure, according to the pro-
visions of Chapter 118 of the Code of 1851. The sheriff
accordingly advertised the mortgaged premises and sold the
same on the 6th of March, 1858, to the assignee and holder
of the mortgage, (Samuel Milliken) and made him a deed
for the same.

Milliken afterwards transferred the note and mortgage to
complainant, and entered into a contract in writing, to con-
vey to him the premises so purchased by him at the sheriff's
sale.

Thatcher v. Haun et al.

On the 26th of August, 1858, complainant filed his petition in the Clinton District Court, against Haun and his wife, and many other respondents as incumbrancers, praying a foreclosure of said mortgage.

At the term of which the notice was returnable, (September, 1858,) complainant amended his bill, by leave of court, making S. Milliken a party; setting up the proceedings by the sheriff foreclosing said mortgage, and the agreement of said Milliken to convey; that there was a mistake in said agreement in the description of some portions of the lands included in the mortgage; that respondents claim that said sale was invalid, and conferred no title upon said Milliken, and praying that said mistake might be corrected; that Milliken should be decreed to convey the proper premises to complainant; that his title might be quieted against all said respondents, and that if said sale should be held invalid, then that an account might be taken and a decree entered for the sale of said premises so mortgaged, and for a foreclosure of the equity of redemption of all said respondents.

The cause was continued and the respondents ruled to answer within twenty days. In vacation the venue was changed to Cedar County. At the next (April) Term of that court, and on the first day thereof, a short rule was taken on respondents to answer on the morning of the next or second day. There was no answer: decree entered *pro confesso*, and from this respondents appeal. For the other material facts see the opinion.

*Wm E. Leffingwell* for the appellant.

I. The decree should be set aside because the act of plaintiff's attorney rendered it impossible for the defendant to comply with the order of the court below.

II. The original bill was for the foreclosure of a mort-

gage. The amended bill sits up the sale of March 6th, by the sheriff, and asks relief in the alternative; that is, "If the sale is valid, than a correction of the mistake and a specific performance against Milliken. It not valid, then a foreclosure of the mortgage." The nature of these claims and the relief sought are so inconsistent that they cannot stand together.

III. If the sale was valid, the plaintiff had the legal title; and having that his remedy was at law, and a court of equity should have dismissed his bill, as to every thing except the correction of the mistake.   *Roberts* v. *Talliaferro*, 7 Iowa, 110; *Harrington* v. *Cubbage*, 3 G. Greene. 307; *Clausen* v. *La Frenz*, 4 Ib. 224; *Brainard* v. *Holsaple*, Ib., 485; *Piggott* v. *Addicks*, 3 Ib., 427; *Preston* v. *Daniels*, 2 Ib., 536.

IV. This sale purports to have been made by the sheriff, acting under chap. 118 of the Code, in relation to foreclosures by notice and sale.   That portion of the code was repealed by an act approved July 25th, 1858, which took effect on the 3d day of March, A. D., 1858, which rendered these proceeding nugatory.   The law providing for foreclosure by notice and sale having been unqualifiedly repealed before this sale was perfected, the sale is void.   Dwarris on Stat., 676; *Key* v. *Goodwin*, 4 Moore & Payne, 341; *Millers Case*, 1 Bla. R., 451; *Storer* v. *Irnwell*, 1 Watts, 258; *Road* v. *Hatfield*, 4 Yates, 392; *Commissioners* v. *Duane.* 1 Binney, 601–608; *Maggs* v. *Hunt*, 12 Moore, 357; *Suiters* v. *Ellyson*, 9 Barn. & Cress., 750; *Dale* v. *The Governor*, 3 Stew. [Ala.,] 387; *People* v. *Livingston*, 6 Wend., 536; *Yaten* v. *The United States*, 5 Cranch, 281; *The Schooner* v. *The United States*, 6 Ib., 329; *The United States* v. *Passmore*, 4 Dall., 372; *Abbott* v. *The Commissioners &c.*, 8 Watts. 517; *Butler* v. *Palmer*, 1 Hill, 334,

*James Grant*, for the appellee, as to the propriety of the

default in this case cited *Harrison* v. *Kraner et al.*, 3 Iowa, 543; as to the power of a court of chancery, when any part of the relief sought is equitable in its nature. *Traip* v. *Gould*, 15 Maine, 82; as to the exercise of jurisdiction once obtained by a court of equity for full relief. *Whipple* v. *Farrar*, 3 Mich., 436; repeals by implication are not favored by the courts. *Cassey* v. *Harned*, 5 Iowa, 1; a special statute does not repeal a general statute by implication. *Goddard* v. *Boston*, 20 Pick, 1107; *Burkenhead Docks* v. *Burkenhead Company* 23, L. & E., 389; that in this State the repeal of a statute does uot affect any rights accrued, or proceedings commenced under or by virtue of the statute repealed. Code of 1851, § 26; *Inskeep* v. *Inskeep*, 5 Iowa, 221.

WRIGHT, J.—The controversy, as presented in the court below and in this, is between the complainant and the mortgagor Haun. And the first question made is, whether there was error in entering the decree *pro confesso* and refusing respondent leave to answer, under the circumstances detailed in the record.

We are clearly of the opinion that sufficient excuse was shown for not answering within the twenty days required by the rule entered at the September Term, 1858. And we are equally clear, at the same time, that there was no error in the decree in this respect, nor in the refusal to give further time for answering. In the first place, taking all the affidavits for and against the excuse shown and the leave asked, and there is certainly no satisfactory cause shown for not answering after the expiration of the twenty days, and before the first day of the next term in April, in Cedar county. By thus answering, respondents could have saved their default, and this it was their duty to do. Where a party is ruled to answer by a day named, and for his non-compliance has a good and valid excuse, he is not thereby

released from answering after that time and before the next term, (if the rule day extends into vacation,) unless for such continued default he has sufficient justification.

In the second place, we are not satisfied that there was any abuse of the discretion lodged with the court below, in entering the default for not answering under the short rule, taken at the April Term, 1859, or at least such abuse as to justify our interference.

Then again, and finally on this subject, respondents, in their motions for time to answer, fail to make any sufficient averment of merits, or any showing to lead to the conclusion that substantial justice required such continuance. They moved for time to answer beyond the term; then to answer during the term, and then after the default was entered to set it aside, and it was not until after the default was entered and the decree rendered that there was an attempt at showing merits. Still no answer accompanied the affidavit, nor any sufficient excuse for not presenting the same. Upon the whole, addressed as such applications are to the sound discretion of the chancellor, and in view of the rule, that relief should never be granted where the default is the consequence of the party's own neglect, and the further one, that an answer should have accompanied the application, we conclude that the default was properly entered. (*Harrison* v. *Kramer*, 3 Iowa 543.)

II. It is next claimed that there is an inconsistency in the object and purpose of the original and amended bill. So much so, that it was improper to grant any relief thereon to complainant. The original bill asked a foreclosure of the mortgage, making no reference to the proceedings under the sheriff's sale of March 6th, 1858. The amended bill set forth these proceedings : the assignment by Milliken and his agreement to convey; the mistake in the description ; the claim by respondents of the invalidity of said proceedings ; and then prays that the title may be quieted, the mistake correct-

Thatcher v. Haun et al.

ed, the equity of respondents to the premises cut off; and that if this sale shall be held invalid and complainant is not entitled to this relief, then that an account may be taken, and that he may have a decree of foreclosure in the usual form &c.

To this form of the bill we are unable to see any just ground of objection. In all its parts it refers to the same mortgage. One part of the prayer is for a foreclosure and the other for a specific performance and to correct a mistake. The relief sought in either case, is of an equitable nature. It is not to be denied that it would have been better for the pleader to have set out the foreclosure proceedings by the sheriff in his original bill, following this up with averments showing his title, or the agreement with Milliken, the alleged mistake; the claim of title by the other respondents, praying the correction, the quieting of his tittle, and then the alternative for a foreclosure, if said proceedings by the sheriff were invalid. But while this would have been the better course, the same end is substantially attained in the course pursued. If treated · as a bill for the specific performance and reforming of the contract between complainant and Milliken, improper parties, as respondents, were brought in, this might become material in taxing costs. It must be borne in mind, however, that the bill charges, that all the respondents, naming them, claim or pretend to have some interest in said property, or in some part of it, and the prayer is, that complainant's title may be quieted. To this charge there is no response. The bill is taken as confessed and true in this respect as in all others. In this view therefore they were properly made parties and liable for costs.

As against Milliken, the court clearly had jurisdiction, treating the bill simply as one for specific performance. As against Haun and all the other respondents, the jurisdiction was alike clear, treating it as a foreclosure proceeding.

Having jurisdiction for either or both purposes, therefore, the chancellor most manifestly had the right to retain the bill for complete relief, or such as would be consistent with, not to exceed, the case made. And having this jurisdiction, if it was found that complainant was entitled to equitable relief; it was competent to award such process as would execute the relief granted. Thus being entitled to the premises in equity, the chancellor could decree their surrender, without leaving him to his common law writ. In *Whipple* v. *Farrar*, 3 Mich. 436, it is said: "Decreeing the surrender of possession of lands in a proper case, is an ordinary and familiar exercise of the power of the court (of equity,) and the execution of such a decree is as easy and simple as the execution of a judgment at law for possession in an action of ejectment."

III. It is next insisted that the sale by the sheriff was established by the court, without any allegation or proof of its regularity or validity. If the allegations in this respect are sufficient, the proof is immaterial, for the bill being confessed, proof was not necessary. Without reciting this part of the bill, in detail, we unite in the opinion, that guided by the principles recognized in *Harrison* v. *Kramer, supra*, it contains all that is essential or material to form a predicate for the decree.

IV. The last and most important point presented for our consideration is, that the sale by the sheriff was invalid and could give no right to complainant, or Milliken under whom he claims, for the reason that the law authorizing it was repealed before said sale was made. And while it is pressed with much zeal and a corresponding ability, to our minds it is of easy disposition. To understand the *very point made in argument*, reference to the statutes relied upon becomes important.

The sale by the sheriff was made under §§ 2071 to 2083, chapter 118 of the Code of 1851, known as the "foreclosure

by notice and sale," or " short foreclosure." On the 25th of February, 1858, an act was passed which provided, that " hereafter no mortgage of real estate shall be foreclosed in any other manner than by civil action in the proper court &c." And it is now claimed that to this act there was no saving clause, in relation to any pending proceedings, and that as a consequence the provisions of the Code except as to those transactions passed and closed, must be considered as if they never existed; that this transaction or proceeding was not thus passed and closed, and therefore not saved.

The general principle relied upon, independent of some statutory rule, is not controverted, that when a statute is repealed it must be considered as if it never existed, except with reference to such parts as are saved by the repealing statute. And equally well settled is the doctrine, that though a party may have instituted his suit, and the same be pending at the time of the repeal, the jurisdiction is gone, without some saving clause. In the case before us, however, the act of 1858 provided that it should take effect from and after its publication in certain newspapers, under § 26 of article 3 of the Constitution. It is shown by the proper certificate of the Secretary of State that the last publication was made on the 27th of February, 1858. The Code of 1851, § 21, provides, that " all acts which are to take effect by publication in the newspapers shall be published in two papers, and take effect on the twentieth day after the date of the last publication."

The word " hereafter," as used in the act of February 25th, 1858, has reference to the date of the taking effect of the act, and not the date of its passage or approval. *Charless & Blow* v. *Lamberson*, 1 Iowa 435; *Bennett* v. *Bernard*, 6 Iowa 82. This being so, it could not operate upon this sale, or impair its validity, (for by § 21, just quoted, it did not

take effect until twenty days after February 27th, and the sale was made March 6, 1858,) unless the section directing that it should take effect *from and after its publication* shall be construed as repealing the general rule given in said § 21. And upon no principle governing the construction of statutes can this be successfully maintained. The provision of the Code is a general statute. It gives the general rule. It is not declared, "that unless otherwise provided, acts taking effect by publication shall be in force on the twentieth day &c," but the language is broad, sweeping and general, that *all acts* to be thus published shall take effect at that time. To give the act of 1858 the effect claimed would be to repeal a general statute, by one special in its nature, by implication. Not only so, but such a construction would destroy the former statute without necessity. Both may have force and meaning, and both stand: if so, it is our duty to so construe them. Then again, courts never favor repeals by implication. Guided by these well settled principles, we are clearly of the opinion that the repealing act had not taken effect at the time of this sale, and as a consequence that it does not govern it.

Having thus disposed of all the questions made by counsel, we are brought to the conclusion that the decree below must be

Affirmed.

LOWE, C. J., *dissenting.*—Whilst I concur in the ruling of a majority of the court on most of the questions passed upon in this case, I nevertheless dissent from the conclusion reached, that the record taken as a whole presents no error.

There is to my mind a vital question, standing out in prominent relief on the face of the record, which not only justifies but demands a reversal, instead of an affirmance, of the judgment below. That question relates to the power of

the sheriff to foreclose a mortgage under the provisions of chapter 118, of the Code of 1851, by notice and sale. If this power had been taken away and was unauthorized on the 6th of March, 1858, at which time it was exercised, it is impossible for me to conceive upon what principle the judgment below can be upheld. For it is founded upon the idea that the power, when it was summarily exercised by the sheriff at the date just named, in the manner set forth in plaintiff's amended petition, still continued and existed by law, whereas the defendant, Haun, by his counsel insisted that it had been taken away by a repeal of the law, and therefore the sale was nugatory and void. It is true, counsel for the defense assigned a wrong reason for the repeal of the law conferring this power, placing it upon the ground that the Session Laws of 1858, had repealed the same at the time the sale took place. The error of this position by counsel, affords no reason why the court in its revision of the record, the correctness of which has been fairly challenged, should limit its examination to the soundness of the argument which counsel may make in support of alleged error, but should be directed to the existence or non-existence of the error itself.

Now, whilst the provisions of chapter 118 of the Code of 1851 were not inconsistent with the terms and provisions of the old constitution, and that the power therein conferred upon the sheriff might be lawfully exercised, yet I am firm in the conviction that so much of that chapter as relates to summary foreclosures by the sheriff, instantly fell to the ground and become wholly inoperative upon the taking effect of the new constitution under the proclamation of the Governor, published in Sept., 1857. I refer to the last clause of the ninth section of the bill of rights, which declares, " That no person shall be deprived of life, liberty or property without due process of law." This right was not

guarantied to the citizens of Iowa under the old constitution, and as it existed under the constitution of the United States, it had been adjudged to apply only to cases arising before the Federal courts. The interpretation given to the words " due process of law," as they were intended to be used in the sense of the Federal Constitution was, that they meant the right of trial according to the process and proceedings of common law ; or what is a better definition, " it means law in its regular course of administration through courts of justice." 1 Kent, 9th ed. 621 ; Story Com. on the Const. vol. 3, 264–661.

Our constitution was framed and adopted with a full knowledge of the judicial construction given to these words, and we must presume that it was intended that they should be used in the sense, and to have the same legal effect assigned them under the federal constitution. Like the other absolute rights enumerated in the first article of the constitution, the passage of no law of the legislature was necessary in order to give it effect. It was self-executing. The 1st section of the schedule provides that the constitution shall be the supreme law of the State, and any law inconsistent therewith shall be void. The 2d section reads, " all laws now in force, and not inconsistent with this constitution, shall remain in force until they shall expire or be repealed." As the law under which the sheriff's foreclosure was made, was inconsistent with the provision of the constitution referred to, it ceased upon the taking effect of the constitution, to have any legal operation. It follows therefore, that the sale aforesaid was irregular and void ; nor can it be legitimately claimed, that this change which the new constitution has made in the law of foreclosure, must be limited to future debts or liabilities, otherwise it will have the effect to impair the obligation of contracts.

We are not insensible of the difficulties which the courts of this country have had in establishing a general rule, which

would indicate how far the legislature might alter the law of procedure without affecting the obligation of contracts. But it is settled that the remedy may be changed in many respects without its having this effect.

Chancellor Kent's rule upon this subject was, " that the constitution shall not be deemed violated so long as the contracts are submitted to the ordinary and regular course of justice, and the existing remedies are preserved in substance." Applying this rule to the case in hand, we find that one of two concurrent but distinct methods of foreclosing mortgages is taken away, leaving the other unimpaired and affording a full and complete remedy.

For the above reason I conclude that the power to make a sheriff's foreclosure of the mortgage was wanting. The affirmance of the judgment below, in effect, asserts the existence of this power, and that is was lawfully exercised, to which I can not assent.