$\begin{array}{cc} 13 & 259 \\ 128 & 653 \end{array}$

## WHITE v. HAMPTON et al.

1. TRUSTEE: REFUSAL OF TRUSTEE TO ACT. A trust will not fail because a trustee refuses to act; neither will the beneficiary, in a court of equity, lose his interest in an estate by the disclaimer or refusal of the trustees to accept the trust.

2. RECORD OF MORTGAGE. In an index entry of a mortgage filed for record, the words "see record" were written in the column in which the description of the lands should have been set out, instead of such description: *Held*, that it was sufficient to charge a subsequent incumbrancer with notice, following *Colvin* v. *Bowman and Neal*, 10 Iowa, 529; *Bostwick* v. *Powers*, 12 Id., 456.

3. MORTGAGE: ASSIGNMENT: MERGER. The acquisition of the absolute title to real estate by a mortgagee of the same, after an assignment and transfer of the mortgage to a third person, does not operate to merge the mortgage.

4. SCHOOL FUND MORTGAGE: ASSIGNMENT. Where the first incumbrance on a parcel of real estate was a mortgage to the school fund commissioner to secure the repayment of a portion of the school fund, loaned nominally to the mortgagor, but in fact to one of the sureties, who on the same day became a second mortgagee of the same premises, and subsequently, and after the assignment of his mortgage to a third party, acquired the absolute title: and after a third incumbrance was placed upon the property by the grantee of the first mortgagor (who was the second mortgagee) the assignee of the second mortgage paid to the school fund commissioner the amount due upon the first mortgage, whereupon it was assigned to him by said commissioner, (without recourse;) it was held, that a court of equity would not treat this payment as a satisfaction of the mortgage, but would compel the third incumbrancer to refund the amount thus paid by such assignee for the redemption of the property.

5. REDEMPTION BY JUNIOR INCUMBRANCER. Where the prayer of a petition filed by a junior incumbrancer prayed for leave to redeem the incumbered property from the lien of the senior mortgage, it was held that a

decree ordering a sale of the property by a commissioner, and a further decree confirming the sale made by such commissioner to the junior incumbrancer, for a sum less than the amount of the mortgage debt, and ordering, that upon payment to the senior mortgagee of the sum bid for the property at the sale, the satisfaction of the senior mortgage should be entered upon the proper record, were erroneous.

6. APPEAL. In an action by a junior incumbrancer against a senior mortgagee, in which two decrees are rendered, the respondent may appeal from the second decree notwithstanding a year has expired since the first one was rendered upon default for want of an answer.

7. EXECUTION OF DECREE. In a proper case a court of equity may issue a proper process to enforce the execution of a decree ordering the surrender of lands.

*Appeal from Washington District Court.*

WEDNESDAY, JUNE 4.

THIS case has been twice before in this court. (9 Iowa, 181; 10 Id., 238.) The questions now made arise between complainant and the holders of certain incumbrances on the lands included in the deed of trust made by Hampton; for which see the opinion. Respondents appeal.

*Edmonds & Ransom* for the appellant.

*Grant and Smith* and *Rush Clark* for the appellee.

WRIGHT, J.—1. It is first claimed that the trust-deed is inoperative, because of the failure of complainant to comply with and perform certain conditions set out in the instrument, without which, by its terms, it was to have no effect or force. We do not deem it necessary to follow counsel through the very many positions assumed under this head, to discuss whether the condition referred to is precedent or subsequent, nor whether complainant was sufficiently prompt and diligent in asserting his rights under the deed. All these questions were presented by counsel when this case was last before us, were examined, passed upon, and

we see no good reason for traveling over the same ground again. The ruling then made we believe to be in accordance with the testimony, equity and good conscience, and it will not be disturbed.

Akin to this point is the further position that the estate was never vested in the trustee, but was retained in Hampton, inasmuch as the trustee refused to accept the trust, that no one can be invested with this character by mere gift or nomination, that it required his consent. This point, also, was substantially passed upon before, for the rule is there recognized that equity will not allow a trust to fail because of the refusal of the trustee to act. And we are not aware of any authority which recognizes the doctrine that a beneficiary will in a court of equity lose his interest in an estate, by the disclaimer or refusal of the trustee to undertake the trust. (And see *Leffler* v. *Armstrong*, 4 Iowa, 482.)

II. It is next claimed that Lyon did not have notice of this deed at the time he took his mortgage. The trust-deed was recorded, but it is claimed that it was not indexed as required by § 1213 of the Code. This section was complied with in every respect, except that in the column where the description of the land should be, the recorder wrote, " see record." This precise question was ruled against appellant's position in the cases of *Calvin* v. *Bowman and Neal*, 10 Iowa, 529 ; *Bostwick* v. *Powers*, 12 Id., 456. This ruling is therefore affirmed.

III. Francis Hepburn owned a portion of the land covered by the trust-deed, on the 24th of March, 1855, and on that day executed a mortgage to Hampton, to secure the sum of $625, due in one year. Hampton assigned the mortgage and note for which it was security, March 27, 1855, to Terrill, who assigned to Sharp in May, 1858, who assigned to Lyon, in June of that year. June 16, 1855, Hepburn conveyed the same premises to Hampton. July

14, 1856, $500 was paid on this mortgage. The court below decreed that $125 of the proceeds of the lands covered by this mortgage, and sold under the trust-sale, be paid to Lyon. Lyon says this was not enough, but that he should have been allowed six per cent interest on the note from its maturity, deducting the payment of $500, July 14, 1856. And we do not see why this position is not correct. The doctrine of merger, referred to by appellee, has no application; for when Hampton took the title from Hepburn he was not the holder of the mortgage, but had parted with his interest to Terrill. Nor did he own it at any time after he took the fee.

IV. A mortgage was made by Hepburn on the 24th of March, 1855, to Parrott, as School Fund Commissioner, to secure the $400, borrowed from the. school fund. This mortgage was upon the same lands included in the mortgage of the same date to Hampton. The interest was paid on the loan to January 1, 1857. April 24th, 1858, the holder delivered the note to Sharp, with this indorsement: "Pay to the order of O. H. Sharp, without recourse. John Parrott, S. F. C." — and the mortgage, also, thus: "For value received I hereby assign the within mortgage to O. H. Sharp, without recourse. John Parrott, S. F. C." May 16, 1858, this note and mortgage were transferred by Sharp to Lyon. The bill was filed in this case in September, 1856. The court below found that this mortgage was discharged by payment, was not transferable, and that satisfaction thereof should be entered of record.

It is not pretended that this mortgage was paid in the usual sense of that term, but that when Sharp paid the amount thereof to the Fund Commissioner, it was the duty of that officer to acknowledge satisfaction, that he had no right or power to transfer it, and that the assignee acquired no right thereby to demand of the mortgagor or another incumbrancer the amount thus paid. In other words, it is

claimed that when the commissioner received the money, the mortgage in equity ceased to be a lien on the premises, and that complainant, as a subsequent incumbrancer, is not bound to pay the same in order to redeem. This position is not tenable, to the extent claimed.

Public policy dictates, it is true, that the commissioner shall not be allowed to trade in or negotiate these securities. But the question here is, suppose a third (subsequent) incumbrancer, in good faith, tenders to him the full amount of the claim, (and this is the case before us,) is he not bound to accept it, and can a holder of a second lien, in conscience and equity, claim that the first lien, by such acceptance is extinguished? Most clearly not. By the redemption, the third incumbrancer becomes substituted to all the rights of the original mortgagee. It works no injury to the second mortgagee, and he ought to bear the burden of it, as he was liable to do before. The interest of all these incumbrancers was to have the first mortgage satisfied, and though the commissioner had no power to sell and transfer it, so as to bind the fund or the county, a court of equity will compel a subsequent incumbrancer to refund the amount so paid for its redemption. A note and mortgage to this officer are not invested with such unusual properties and qualities, as to take them out of this general rule.

It is urged, however, that the loanee executed her note with two sureties, as required by § 1101 of the Code, that these sureties are solvent, and that Lyon, as against complainant, should pursue his remedy against them. A sufficient answer to this position is found in this fact. Hampton was one of these sureties, and the testimony conclusively shows that he was in fact the principal, the mortgagor (Francis Hepburn,) being so nominally. The loan was for his benefit, and he in equity is bound to pay it. Lyon

therefore has a right to insist that the debt shall be made out of the mortgaged property.

Another question in the case arises under the appeal of Parrott, as school fund commissioner, upon the following facts: Prior to the trust deed of complainant, Hampton made a mortgage to Parrott on lot 6, block 62, in Iowa city, to secure the sum of three hundred dollars. This lot was sold under complainant's decree, and bid in by him for one hundred dollars. The report of the commissioner making the sale, was in all respects confirmed, and an order made that the $100 should be paid mortgagee, and that the mortgage should thereupon be entered satisfied upon the proper record. It is now insisted that the lot could not be discharged from the lien of the mortgage until the amount actually due was paid. In view of the prayer of complainant's bill, we think the position is correct. The averment is that the mortgage was made prior to the trust deed, and the prayer is that petitioner *may be allowed to redeem*. It is not asked that an account may be taken, that the amount due the respective lien holders be ascertained, the lands sold, and the proceeds applied according to priority of liens, but the prayer is to redeem. To redeem it is not sufficient to pay the amount of the sale, nor any other sum less than that actually due the prior incumbrancer. Under such a bill, the lien is not exhausted nor satisfied by a sale of the premises. White, as the holder of the subsequent lien, and by his purchase under his decree, as the holder of the equity of redemption, must not only pay the sum for which the lot sold, but the sum actually due on the prior mortgage. (*Bradley* v. *Snyder*, 14 Ills., 363 ; *Benedict* v. *Gilman*, 4 Paige, 58.)

The suggestion of appellee that the mortgagee does not appeal, or if so, not within one year from the rendition of the decree, and the further position that he was in default

in the court below, and cannot complain as he has been allowed $100 when he asked nothing, is not correct, nor, to the extent claimed, sustained by the record.   The decree requiring him to take the amount bid, and for that release the lien was entered in November, 1860, and the appeal taken in March, 1861.   This was certainly in time.   True, the mortgagee did not answer.   Nor was it necessary for him to do so.   Complainant asked to redeem.   This was his right, and mortgagee could interpose no valid objection. But he had a right to presume that such redemption would yield to him his legal rights, the full amount due on his mortgage.   If he was allowed less, or if the court established an improper rule in permitting the redemption to his prejudice, he has a right to have it corrected.

Two decrees were entered in this case, which, taken together, adjudge costs against Hampton and Lyon.   Lyon insists that this was error, that he should not have been required to pay any costs.   When it is remembered, however, that the matters most contested were, whether complainant's trust deed was valid, and whether Lyon's subsequent mortgage had priority, and that both these issues were found against respondent, we think the order was correct.   At least, no good reason occurs to us for disturbing it.

Complainant being entitled to equitable relief, it was competent to award such process as would execute the relief granted.   In a proper case, to order the surrender of the possession of lands, is an ordinary exercise of the power of the chancellor.   This rule is one of practical utility, promotes justice, avoids delay, and saves expense. ( *Whipple* ·v. *Farrar*, 3 Mich., 446 ; 1 Story's Eq. Jur., § 71 ;   and *Thatcher* v. *Haun*, 12 Iowa, 310; where this rule is recognized.)   There was no error, therefore, in awarding to complainant the possession of the premises bought at the commissioner's sale.   The sale was made by order of court,

with directions to report at a subsequent term. This report was made and approved, as well as the deed made by the commissioner to the purchaser. It was competent in the same connection to award the possession, all the parties being before the court.

The cause will be remanded, with instructions to modify the decree below in accordance with this opinion, unless a final decree shall be asked in this court. In all other respects, the decree will stand affirmed. But under the peculiar circumstances of the case, each party (White, the complainant, and Lyon, the respondent,) will be required to pay half the costs of the appeal.