## LEFFLER *v.* ARMSTRONG.

It is not necessary to the validity of a trust deed or mortgage, containing a provision, authorizing the grantee to sell the premises, on breach of certain conditions specified therein, that the grantee should join in its execution, or sign and acknowledge the same; or that he should signify his willingness to make the sale, or undertake the execution of the power, by any formal writing indorsed on the deed.

Under such a conveyance, the grantee, upon breach of the conditions, may foreclose by sale, without the aid of a court.

Where a deed of trust or mortgage authorizes the grantees to sell the premises, upon breach of the conditions contained in the conveyance, first giving thirty days' notice of the time and place of sale, a publication of the notice of sale for five successive weeks in a newspaper—thirty days having elapsed between the first publication and the day of sale—is sufficient notice.

Where in a proceeding in equity to redeem certain real estate sold under a deed of trust, or mortgage, containing a power of sale, it appeared, that I. L. being indebted to C., the said I. L. and one J. L. to secure the said debt, on the 25th day of October, 1842, executed a conveyance of real estate, to P. & C., which deed provided that upon the failure of said grantors to make payment according to the terms of the deed, the said P. & C. were empowered to sell said premises to the highest bidder for cash, "first giving thirty days' public notice of the time, place, and terms of sale, and of the property to be sold, by advertisement in some newspaper printed in Burlington, Iowa Territory," and which deed also contained the following clause: "And the said parties of the second part, (P. & C.) covenant faithfully to perform and fulfill the trust herein created. In witness whereof, the said parties have hereunto set their hands and seals, the day and year above written," which deed was signed and acknowledged by the grantors, but not by the said trustees; and where on the 8th day of May, 1847, default having been made in the payment of said debt, the trustees sold the land to the respondent, and in July, 1848, executed and delivered to him a deed for the same—notice of which sale was given by publication in a newspaper, printed in Burlington, which publications were made on the 8th, 15th, 22d, and 29th of April, and on the 6th of May, 1847; and where on the 26th day of Septem-

ber, 1855, the complainants applied to respondent to redeem said real estate, and tendered him his purchase money and interest, which was declined by the said respondent; and where, upon the hearing, the petition of the complainants was dismissed; *Held*, 1. That it was not necessary for the trustees to become a party to the conveyance; 2. That the notice of sale was sufficient, and the sale valid; 3. That the bill was properly dismissed.

## *Appeal from the Des Moines District Court.*

ON the 25th day of October, 1842, Isaac Leffler was indebted to one Cox, in about the sum of $885, and on that day he and John Leffler, to secure said sum, executed a deed of trust to William H. Postlewait and James Creegan. The parts of said deed material to the present controversy, are as follows : Upon the failure of the grantees to make payment according to the terms of said deed, the said trustees were given power to sell the real estate therein described, to the highest bidder, for cash, "first giving thirty days' public notice of the time, place and terms of said sale, and of the property to be sold, by advertisement in some newspaper printed in Burlington, Iowa Territory." "And the said parties of the second part, (Postlewait & Creegan,) covenant faithfully to perform and fulfill the trust herein created. In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written." Said deed is signed by the grantors, but not by the trustees therein named. The certificate of acknowledgment sets forth that the Lefflers and Postlewait appeared before the magistrate, but it is not claimed that either he or Creegan signed the deed. In April, 1843, Cox assigned said deed of trust, or his interest therein, to one Lazier, and in November, 1845, the said trustees by writing indorsed on said deed, in consideration of the payment of three hundred dollars on the trust debt, released a portion of the real estate described therein to said Isaac Leffler. On the 8th of May, 1847, default having been made in the payment of the balance of said debt, the trustees sold the lands to respondent Armstrong, and in July, 1848, executed and delivered to him a deed for the same. Notice of said sale was given

by publication in a newspaper, printed in Burlington, as follows: the *first* publication was on the 8th of April, 1847; the *second*, on the 15th; the *third*, on the 22d; the *fourth*, on the 29th; and the *fifth*, on the 6th of May. On the 26th of September, 1855, the petitioners applied to respondent to redeem said real estate, and tendered him his purchase money and interest. Respondent declined to receive the same, and thereupon, in October of the same year, this bill was filed, praying, for causes therein stated, that petitioners be permitted to redeem said lands, and that Armstrong be required to release to them the said premises. The cause was heard on bill, answer, replication, and exhibits—the bill dismissed at complainants' costs, and they now appeal.

*D. Rorer* and *J. C. & B. J. Hall*, for the appellants.

*C. Ben. Darwin*, for the appellee.

WRIGHT, C. J.—To entitle themselves to the relief asked, and to reverse the decree below, complainants rely principally upon two grounds. The first is, that it was the intention of the grantors, and the parties to said deed, that the trustees should sign and acknowledge the same; that it never was, therefore, properly executed and delivered, but was received by the trustees, or by Postlewait & Creegan as an escrow; and that never having accepted the trust, they had no power to make the sale. In the second place, it is insisted that notice of said sale was not given as required by the terms of the deed.

In the statement of the case, and thus far in this opinion, the instrument executed by complainants is spoken of as a deed of trust. Counsel for complainants so treat it, adding, however, the further argument that if a mortgage, and not a deed of trust, then the persons named therein as trustees could not foreclose by sale without the aid of a court; that such sale was extra-judicial, could confer no title, and that at most the purchaser holds the property in trust for them. We deem it entirely unnecessary in deter-

mining the rights of the parties in this case, to inquire whether this instrument as a deed of trust, was ever properly executed and delivered, or whether, if such deed, it was necessary to the perfection of respondent's title, that the acceptance of the trust should have been indorsed thereon by the supposed trustees.  We have no hesitation in saying, that as a mortgage containing a power to sell in case of default of payment, it conferred ample power upon Postlewait & Creegan to make the sale—and that it was not necessary that they should join in the acknowledgment of said instrument, or its execution.  That parties may legally insert a provision, conferring a power of sale upon the mortgagee, or a third person, is no longer a matter of doubt.  Such mortgagee or third person, upon breach of the condition of the mortgage, is bound to fairly and judiciously dispose of the property, pay the debt from the proceeds, and account with the mortgagor for the balance.  And we know of no rule that requires the mortgagee or third person, where the power of sale is inserted in the mortgage deed, to join in the execution, to sign or acknowledge the same, or to signify his willingness to make the sale, or undertake the execution of the power, by any formal writing indorsed on the deed.  1 Hilliard on Mortgages, ch. 7, p. 90; 4 Kent, 146.  In this case the power was given to third persons, nothing is shown to impeach the fairness of the sale, and we are quite clear that the deed itself fully empowered them to foreclose by sale, without the aid of a court.

The second and only remaining question is, whether the *notice* given was such as was required by terms of the deed. And we are clearly of the opinion that it was.  It is not denied but that more than thirty days intervened between the first publication of the notice and the day of sale.  Nor is it claimed that the notice was not published regularly in each issue of the paper for five successive times.  But it is said that the last issue or publication was on the 28th day after the first one, and that thirty days' notice was not, therefore, given as required by the deed, or in other words, that while the publication may have been continuous from one

publication day to another, or from the *first* to the *last* day of its insertion, yet *after* the last publication it was out of the paper, or ceased to be *in* the paper or continuous, and finally that thirty days should have intervened between the *first* and *last* publication. If the first or any subsequent publication of the notice prior to the last, continued from one publication of the notice prior to the last, continued from one publication day to another, or operated as a continuous notice from week to week, then we must acknowledge that we cannot see why the last publication would not have the same effect. The notice as much continued to be *in* the *last* issue after the day of its publication, as it continued in the first one. The public was as much advised thereby, not only on the day of its publication, but for subsequent days, that there would be a sale, as by any of the previous issues. If the issue of the paper could give no notice of the sale beyond the day of its publication, then there was but five days' notice. But it is conceded in the argument, that each publication was notice for the term between one regular issue and another—and as a consequence, that there was as perfect a notice on the 9th or 24th of April, as on the 8th or 22d, or on any other of the publication days. If so, then why was not the publication on the 6th of May, notice for the term intervening between that and the 13th, the next day for publication? And if, being published on the 13th, there would have been thirty-six days' notice, why not thirty days as on the 8th of May? To our minds, it is conclusively clear, that if the notice continued to have life after the day of its first publication, until the second, and from the second to third, and a like manner to the last, so would the last publication continue in being until the day of sale.

But there is still another view of it presented by counsel for appellants, which has more weight, and that is that thirty days should have intervened between the first and last publication of the notice, and that it is not sufficient that thirty days intervened between the first publication and the day of sale. We say this has more weight than the position last examined, and yet we must say that but for

Leffler v. Armstrong.

the *dictum* forming it, found in *Armstrong et al.* v. *Scott et al.*, 3 G. Greene, 433, we should have had but little difficulty in holding the position untenable.   In that case the terms of the trust deed with reference to the publication of notice were substantially, if not identically, the same as in the one before us.   The trustees being about to sell the property, the grantors filed their bill to enjoin the sale.   It seems that but *one* publication was made, which was more than thirty days before the proposed day of sale, and the question was, whether this was sufficient.   It was held that such notice should not only be published thirty days before the sale, but it should have been continued ; that it was indispensable that the publication should be continued, as that the required time should elapse ; and that there being but *one* publication, and no more, there was no more power in the trustees to sell, than if there had been no publication. And having thus decided fully, and as we think most correctly, the very point, and the only point, that could or did legitimately arise on this part of the case, the opinion concludes with this *dictum*, " thirty days should have elapsed between the first and last publication, as upon giving this notice depended his (the trustee's) power to sell."   In holding as we feel constrained to do, adverse to this position, we do not regard that we overrule the *decision* made in that case—for it was entirely unnecessary for the court to announce any opinion, upon any other question than the simple one whether *one* publication was sufficient.   Beyond this, all that was said was *obiter dicta*, and if such general *dicta* can in any case be regarded as establishing the law, then truly has it been said " that nothing is yet settled, or can long be settled."   *Frants* v. *Brown*, 17 S. & R. 292.

The publication was made regularly every week, there was no omission.   The notice, as we have before substantially said, was circulating, and being published to the public and the world in legal contemplation, as much and effectively on each day, hour and minute after one publication, and before the succeeding one, as it was at the instant of time when the paper was issued or delivered to its readers.

And yet it would not do to hold that *one* publication, thirty days prior to the sale, would be sufficient; for the language used, as well as reason and good sense, would dictate a continuous or successive publication—in those modes of repetition which the subject matter would allow. And, therefore, in this case (there being no charge or pretence that a daily paper was then issued in Burlington,) it is only necessary to say that successive publications in the weekly issue were required, and if this requirement was not the law, and the contract of the parties were thus far complied with, being thus published, and thus imparting notice to the public for every day and hour intervening between each publication, so after the last issue, and on the day of sale, the notice was as positive, as clear, and as sufficient for all practical purposes, as it had been for any minute of time subsequent to the first insertion.

Let us state the argument categorically thus: Was the "advertisement," spoken of in the deed, *in* the newspaper on any other days than the days of publication? This is admitted, and could not well be denied. If so, was it not as practically in the paper for six days of each week as it was on the seventh, or the publication day? That is to say, was the notice any more given to the public on the seventh than on the six days? Did the parties contemplate the mere setting up of the notice, and striking of it off in the paper, or was the circulation of such paper and reading of it by the public, the leading purpose and object of the advertisement? Was not the *publication* of the fact of sale what was designed? What do we understand by such publication, other than a notification to the people at large by printing and circulating the same in the paper? And if such publication operated as a notice on the days on which the paper was *not* published, why did not such notice continue *after* the last issue of the paper, to the day of sale, such sale having taken place prior to the next publication day? If every day, subsequent to the first, and prior to the last issue, was a day of *notice*—if up to the sixth of May (the date of the last issue,) there was *twenty-nine days* "pub-

lic notice of the time, terms and place of sale, and of the property to be sold by advertisement in some (a) newspaper printed in Burlington, then why were not the 7th and 8th of May *notice* days, and why did not the last issue give pub-lic notice on those days of the sale, as effectually as did any previous publication for any day subsequent to the issue? What legal or logical consistency is there in saying that for all the days *prior* to the last issue, there was notice—but after that time there was no notice beyond the minute or the day that the paper was issued? And if public *notice* was what the parties designed—and if such notice is given by the contemplated circulation and reading of the paper, and not merely by taking the impression from the type in the printing office—why is there not as much thirty days' notice, if that length of time intervenes between the first publication and the day of sale, as where it intervenes between the *first* and *last* publication? To our minds there can be but one correct answer to this last question. And the error of any other view arises from this fact, that the notice is treated as being given or imparted on the day of and by the printing of the paper only, and not upon the days when it is being circulated and read, and by such circulation and reading. And we conclude, therefore, that the notice in this case, having been published successively in the newspaper, and thirty days having elapsed between the first publication and the day of sale, such notice was sufficient, and the title of the purchaser is not invalidated for any supposed irregularity in this respect.

In conclusion, we may say, that the cases of *Dulty* v. *Zeigler*, and *Temple* v. *Casstens*, 1 G. Greene, 164 and 192, cited by appellants, do not decide any question arising in this case. In *Early* v. *Doe*, 16 How. 641, relied upon, the length of time required by the law, had not elapsed between the first publication and the day of sale, but it is nowhere intimated in that case that such length of time should have elapsed between the first and last publication. On the con-trary, while the question did not directly arise, it is almost assumed as true, that the rule would have been good, if the

required length of time had passed from the date of the first advertisement to the day of sale. But without further extending this opinion by citations from that case, it is sufficient to say that it contains nothing in conflict with the views here expressed.

Decree affirmed.