# FIRST NATIONAL BANK OF BUTTE ET AL., RESPONDENTS, *v.* BELL SILVER AND COPPER MINING COMPANY ET AL., APPELLANTS.

CONVEYANCES— *Mortgage of realty with power of sale— Deed of trust— Sale under. — Notice.* —An instrument in writing was executed by one of the defendants, to secure a loan of sixty thousand dollars, represented by bonds issued to the makers of the same. It conveyed two mining claims to trustees, and authorized them to sell the property at public auction, and apply the proceeds to the payment of the loan in the event of a default. The conditions provided for such sale, among other things, recited, "first giving thirty days' notice of the time, place, and terms of such sale, by publishing the same once a week, for three successive weeks, in one of the principal newspapers for the time being in Boston, Massachusetts, and Butte City, Montana." Upon default in the payment of said bonds, the said trustees sold the property at auction to the holders of the bonds for forty-five thousand dollars. The notice of sale contained the same description of the property as that set forth in said instrument, and was duly published in a Boston newspaper, thirty days prior to the sale. An interval of only twenty-two days existed, however, between the date of the last publication in the Butte newspaper and the date of the sale. In other respects there was no dispute as to the sale having been in compliance with the requirements of the said instrument. The plaintiffs brought their action in ejectment, for the said property under the deed executed to them by the said trustees. *Held,* that said instrument was a mortgage with a power of sale, rather than a deed of trust; and that the sale thereunder was valid, the notice being sufficient both as to the description of the property and the publication thereof.

STATUTORY CONSTRUCTION—*Section 371, division 1, of the Compiled Statutes construed—Mortgages of realty with powers of sale and deeds of trust— Title of mortgagee in mortgaged real estate.*—Section 371, division 1, of the Compiled Statutes was adopted by the legislature of Montana from the laws of California. (Cal. Practice Act, 1851, § 260.) It was contended in the case at bar, that under said section, a power of sale in a mortgage of real estate, or deed of trust, authorizing a trustee to sell at public auction the property embraced therein as security for the payment of a debt, without first having obtained a decree of foreclosure, was a nullity. *Held,* that the construction placed upon statutes by the courts of the States from which they have been adopted must, as a rule, govern the courts of the States or Territories adopting them; and that the courts of California having construed said section 371 as being inapplicable to mortgages with powers of sale and deeds of trust, their construction as to the same must prevail in Montana. *Held,* that the term " foreclosure," as used in the law of real estate mortgages in Montana, has a wider meaning than as defined by Bouvier: " A proceeding in chancery, by which the mortgagor's right of redemption of the mortgaged premises is barred or closed forever;" and that under a power of sale in such a mortgage, the same may be validly foreclosed by a sale without a decree of court, and the equity of redemption barred; that section 371 does not repeal in express terms the common law as to the title of a mortgagee; it only forbids his taking possession without a foreclosure and sale; and that a mortgagee has such an interest in land mortgaged, as will support a power of sale in the mortgage; and that such a power coupled with said interest becomes a part of the security, and is irrevocable. (*Fee* v. *Swingly,* 6 Mont. 596, distinguished.)

*Appeal from the District Court, Silver Bow County.*

### STATEMENT.

An action in ejectment for the recovery of two mining claims. The defendant, the Bell Silver and Copper Mining Company, executed to Samuel Wells and Theodore H. Tyndale, as trustees and mortgagees, a certain instrument in the nature of a deed of trust or mortgage, upon the property in dispute, and certain mining machinery and tools upon the same, to secure the payment of certain bonds it had issued for money borrowed. The said instrument is substantially set forth in the opinion. Upon default in the payment of the bonds, the said trustees sold the mortgaged property to the holders of the bonds, the plaintiffs in this action, at a certain advertised time and place, in Boston, Massachusetts, in order to carry out the powers conferred on them in the said instrument, and delivered a deed for the same. Upon the refusal of the Bell Silver and Copper Mining Company, and the other defendants (who were working the mines under a contract with the said company for the extraction of ore), to surrender possession of the premises, upon the ground that the sale made by the trustees was void, suit was brought,

upon an agreed statement of facts, except as to the value of the property at the date of the sale. The trial court found as to the only point of fact at issue, that the sum of forty-five thousand dollars, for which the property sold, was only thirty-seven and one half per cent of its value at the date of sale. The description of the property contained in the notice of sale given by the trustees, and which was a copy of the description in the mortgage, was as follows: "All and singular, the premises and property described in said mortgage deed, viz., that certain quartz-lode mining claim, situate in Summit Valley Mining District, Silver Bow County, Montana Territory, known as and called the Bell Lode, containing thirteen and thirty-two hundredths acres of land, more or less, and embracing fourteen hundred and twenty-one linear feet of said Bell Lode, being mineral entry No. 555, in the series of mineral entries in the land office at Helena, Montana Territory, designated by the surveyor-general as lot No. 69, embracing a portion of section 7, township 3 north, of range 7 west, of the principal meridian, being the same premises conveyed by United States patent, dated the thirtieth day of April, A. D. 1881, recorded in volume 58, pages 155 to 161 inclusive, in the records of the general land office, to William McDermott and Geoffrey Lovell, together with all and singular the lodes and veins within the lines of said claim (not excepted on the official plat), with all dips, spurs, mines, mineral easements, mining fixtures, implements, rights, privileges, and appurtenances thereunto in anywise belonging. Also, the certain lot, pieces, or parcels of land, situated in said county of Silver Bow, Territory of Montana, and bounded and described as follows, to wit: Being the northeast quarter (N. E. ¼) of the northeast quarter (N. E. ¼) of section number 30, in township 3 north (T. 3 N.), of range 7 west (R. 7 W.), of principal base and meridian, in the Territory of Montana, containing an area of forty (40) acres, more or less, together with all the buildings, privileges, franchises, and appurtenances to the same belonging. Also, all the machinery, improvements, fixtures, tools, utensils, stock, and personal property, of whatever name or nature, and wherever situated, belonging to or employed by said Bell Silver and Copper Mining Company, and conveyed by said mortgage to said mortgagees and

trustees." Judgment was rendered for plaintiffs, and defendants appealed.

*Thomas L. Napton,* and *Sanders, Cullen & Sanders,* for Appellants.

The *lex rei sitæ* controls sales of real estates. (*U. S. v. Fox,* 94 U. S. 315; *Bronson* v. *Kinzie,* 1 How. 311; Rorer on Interstate Law, 207.) The paper in question being a mortgage, its whole intent was to secure sixty bonds, and the process by which, in case there was default in their payment, the money was to be obtained, was a part of the security. (*Bradley* v. *Chester Valley R. R. Co.* 36 Pa. St. 151.) The notice to sell, which was a condition precedent to any sale, and without which any sale is confessedly void, was not given. The notice required is specifically described in the mortgage. A failure to publish for three weeks, thirty days before the sale, is as fatal as to omit it in some of the issues of the paper. (See *Early* v. *Doe,* 16 How. 610.) But the notice was defective in that it did not describe the property to be sold, which is an essential prerequisite. (*Jackson v. Meyers,* 14 Johns. 354; Murfree on Sheriffs, §§ 669, 679, 1009.) The regularity and validity of the sale is a part of the respondents' bill, and must appear. (*Jackson* v. *Clark,* 7 Johns. 216; *Shillaber* v. *Robinson,* 97 U. S. 68; *Bigler* v. *Waller,* 14 Wall. 297.) Respondents say there is in the mortgage a power of attorney, no part of the security, under which the mortgagees acted in conveying the property after the sale to the beneficiaries of the mortgage, and to justify such action they cite *Fogarty* v. *Sawyer,* 17 Cal. 589. There was no defeasance in the instrument in that case, and the power was executed in the name of the principal or grantee, and not in the name of the mortgagee or trustee. A conveyance to secure a debt does not carry the title or right of possession, but only a chattel interest until foreclosure. It may be said this is a technical objection, but it is only apparently technical. It is substantial and fatal to respondents' recovery. (See *Clarke, Lessee,* v. *Courtney,* 5 Peters, 318.) Under the statutes of Montana, can respondents recover except by a proceeding in court after a decree rendered and a sale thereunder? To this question the appellants answer no. In Montana, and in most of the jurisdictions of this country,

equity and law alike hold the title to remain in the mortgagor, and have thrown around that title, before it can be divested, the panoply of a judical determination, open to any contention the parties desire to make. (Mont. Rev. Stats. § 246, p. 109, ed. 1879; also, § 359, p. 111.) Respondents have sought to evade the force of the statute, by denying that this instrument, as affecting the land, is a mortgage, and calling it a deed of trust. The grantee, who is the creditor, holds his title on a specific trust to pay himself the debt and return the surplus to the grantee, no less than does the grantee who is not the creditor. The highest courts in Montana (see *Fee* v. *Swingly*, 6 Mont. 596), and of the United States (see *Teal* v. *Walker*, 111 U. S. 242), have held that a deed to a grantee to secure a debt to a third person is a mortgage. By their pretended sale, Wells and Tyndale assigned the mortgage simply, and their action has no other significance. (*Brobst* v. *Brock*, 10 Wall. 534; *Wakeman* v. *Hazleton*, 3 Barb. Ch. 148.) The State of New York has no statute declaring that title shall not pass to the grantee, and in the absence of such a statute the reasoning of the Supreme Court in *Shillaber* v. *Robinson*, 97 U. S. 68, applies. The sale being part of respondents' title, it must be such as courts will sustain, and any marked under-valuation in the price paid will vitiate the sale. (*Peugh* v. *Davis*, 96 U. S. 337.) It must be shown that the conduct was full, frank, and fair, and that the property brought what it was worth to extinguish the equity of redemption. (*Villa* v. *Rodriquez*, 12 Wall. 329.)

*Knowles & Forbis*, and *W. W. Dixon*, for Respondents.

It should be kept in mind in this case, that no charge of fraud or unfairness is made or raised by the pleadings. Appellants do not ask to have the sale set aside or to redeem from it. Therefore fraud in fact, or mere irregularities in the sale, are waived. (*Markey* v. *Langley*, 92 U. S. 153.) Fraud must always be pleaded (Boone on Code Pleading, p. 73; *Smith* v. *Auerbach*, 2 Mont. 349); and so must any equitable defense to an action at law. (Boone, pp. 364, 365; *Lamme* v. *Dodson*, 4 Mont. 589.) The instrument under consideration is what is usually called a deed of trust. (*Taylor* v. *Stearns*, 18 Gratt. 244; *Sherwood* v. *Saxon*, 63 Mo. 78; *Koch* v. *Briggs*, 14 Cal.

257; *Grant* v. *Burr*, 54 Cal. 298; Jones on Mortgages, §§ 62, 1769–1771.) The construction of a contract is for the court, and a matter of law. (2 Parsons on Contracts, 492; *Heryford* v. *Davis*, 102 U. S. 243, 244.) It is certain that the grantees were trustees, and they acted for both parties. The conveyance was made to them as trustees, and in that capacity they acted. It does not make much difference in this case, whether the instrument is called a trust deed, or a trust deed in the nature of a mortgage. As to the notice of sale, it was sufficient if thirty days or more intervened between the first publication and the day of sale. (75 Am. Dec. 708, 709, n.; *Leffler* v. *Armstrong*, 4 Iowa, 482; 2 Jones on Mortgages, § 1838.) As to notice, all that is necessary is that the contract or power be complied with. (Wade on Notice, § 1133.) The description in the notice is the same as in the trust deed, and besides this action does not relate to the personal property sold. (Jones on Mortgages, § 1840.) What the respondents say is, that there is in the mortgage or trust deed, a power of sale, given to the mortgagees or trustees. This power of sale is something more than a mere power of attorney. (Jones on Mortgages, § 1792; *Bradley* v. *Chester Valley R. R. Co.* 36 Pa. 151; *Strothers* v. *Law*, 54 Ill. 413; *Collins* v. *Hopkins, Adm'r*, 7 Iowa, 463; *Calloway* v. *People's Bank of Bellefontaine*, 54 Ga. 441.) Another point in which a power is different from an ordinary power of attorney is, that it passes with the assignment of the debt secured by the mortgage, in the same manner as the mortgage, and is considered a part of the security. (Jones on Mortgages, §§ 826, 1785, 1786, 1787; *Bradley* v. *Chester Valley R. R. Co.* 36 Pa. 151.) The exercise of such a power of sale, as is found in the mortgage under consideration, is considered a sort of a foreclosure of the mortgage, provided by the parties themselves. (Jones on Mortgages, §§ 953, 1773.) Such a power as this is executed in the name of the mortgagee or donee of the power, and not in the name of the mortgagor. (2 Washburn on Real Property, 5th ed. 719, mar. p. 324; *Wilson* v. *Troup*, 2 Cowen, 195–239; 4 Kent Com. 160, mar. p. 147; *Munn* v. *Burges*, 70 Ill. 604–612; *Bergen* v. *Bennett*, 1 Caines Cas. 1; 2 Am. Dec. 281; *Hall* v. *Bliss*, 118 Mass. 554–559; *Cranston* v. *Crane*, 97 Mass. 459.) The power should always be executed

according to its terms. If it is provided that it should be executed in the name of the mortgagor, or donor, it must be so executed. If in the name of the mortgagee, or trustee, or donee, then in his name. (Jones on Mortgages, § 1778; *Fogarty* v. *Sawyer*, 17 Cal. 587; *Cranston* v. *Crane*, 97 Mass. 459.) The provisions in regard to the power of sale in the mortgage, or trust deed under consideration, were sufficient power to warrant the sale in the name of the mortgagee. (Jones on Mortgages, § 1789; *Munn* v. *Burges*, 70 Ill. 604.) If the power of sale granted was legal, and was executed according to the terms of the instrument, the trustee's deed conveyed the title and cut off all equity of redemption. All the authorities are to this effect. Such instruments as the one here in question are common everywhere as securities. (2 Washburn on Real Property, §§ 67–81; 2 Jones on Mortgages, §§ 1764–1767; *Shillaber* v. *Robinson*, 97 U. S. 77.) There can be no doubt of the validity of the power of sale here in question, unless it is prohibited by statute, and this is the real question to consider. Under section 359, Practice Act, Revised Statutes, there must be a foreclosure and sale, but the section does not provide that this must be by action under section 346. (See *Shillaber* v. *Robinson*, 97 U. S. 77, 78.) Section 346 does not say that the mortgagee shall have but one remedy, or one right. It only provides, that when he comes into court for relief, there shall be but one action. It does not say that the parties may not agree to any other mode of foreclosure and sale than by action under section 346. If there is a foreclosure and sale, whether under section 346, by action or under a power given by the mortgage, section 359 is satisfied. Under our Code of Civil Procedure there are many instances where only one action is provided, but this does not preclude other remedies by act or agreement of the parties. (See *Bryant* v. *Carson L. Co.* 3 Nev. 313; *Wilson* v. *Brannan*, 27 Cal. 268.) These sections 359 and 346 are identical with the sections in the California Practice Act, and this practice act with these sections was adopted in Montana in 1869. Before that time (and ever since) the California courts had construed these sections. In *Koch* v. *Briggs*, 14 Cal. 257, section 359 was held not to prohibit sales under deeds of trust. In *Fogarty* v. *Sawyer*, 17 Cal. 590, a power of sale in a mortgage was held good and not pro-

hibited by section 359. In *Cormerais* v. *Genella*, 22 Cal. 116,
*Fogarty* v. *Sawyer* is followed upon this point. This same case
of *Fogarty* v. *Sawyer* came up again in 23 Cal. 570, and was
again decided as in 17 Cal. The doctrine of *Koch* v. *Briggs*,
and of *Fogarty* v. *Sawyer*, has been followed and approved by
the Supreme Court of California in *Grant* v. *Burr*, 54 Cal. 298;
*Bateman* v. *Burr*, 57 Cal. 480; *Durkin* v. *Burr*, 60 Cal. 360;
121 U. S. 558. The Civil Code of California, providing for
powers of sale in mortgages, was not adopted until 1872 or
1873. When in 1869, the legislature of Montana adopted the
California Practice Act, almost *verbatim*, is it not reasonable to
presume that they adopted it with the judical constructions
placed upon sections 359 and 346 before that time by the
Supreme Court of California? That a statutory provision for
foreclosure of mortgages by action does not prevent foreclosure
under a power of sale by agreement of the parties, the following
cases, in addition to the California cases above cited, are direct
authorities: *Carson* v. *Blakely*, 6 Mo. 273; 35 Am. Dec. 440;
*Fanning* v. *Kerr*, 7 Iowa, 450; *Collins* v. *Hopkins*, 7 Iowa, 463;
*Morrison* v. *Bean*, 15 Tex. 267; *Blackwell* v. *Barnett*, 42 Tex.
326; *Sampson and Keene* v. *Williams*, 6 Tex. 102. And the
case of *Leffler* v. *Armstrong*, 4 Iowa, 482; 68 Am. Dec. 672;
also bears upon the question. In *Shillaber* v. *Robinson*, 97
U. S. 68 (cited by appellants), what was held, was that the
notice of sale did not comply either with the requirements of the
statute, or the terms of the mortgage. In *Fee* v. *Swingly* there
was no foreclosure or sale by action or otherwise. It is like
*Teal* v. *Walker* in this respect. And neither of these cases
decides, nor was the question raised, whether or not, after fore-
closure and sale under a power in a mortgage, the purchaser is
entitled to possession. They do not touch the question whether
such power of sale is valid, or prohibited by section 359.

McConnell, C. J. — This was an action of ejectment, brought
by the plaintiffs against the defendants, for the recovery of two
mining claims, described in the complaint. There was judg-
ment for the plaintiffs, and an appeal taken from said judgment
to this court. The pleadings make a case of ordinary ejectment.
There is no special defense set up in the answer of the defend-

ants. The case was tried by the court without a jury upon certain agreed facts, which have been transferred to the transcript, in the nature of a special verdict. The substance of them is that, on the twenty-fifth day of April, 1882, the defendant, the Bell Silver and Copper Mining Company, was the owner of, and then was, and ever since has been, in the possession of all the premises described in the complaint, the other defendants being at the time of the commencement of this action at work on said premises under a contract with said company. The defendants are entitled to a judgment in their favor, unless the following facts entitle the plaintiffs to recover, to wit: On the twenty-fifth day of April, 1882, the defendant company executed and delivered, to the said grantees therein named, an instrument in writing, which was duly recorded in substance as follows, to wit: "This indenture, made this twenty-fifth day of April, by and between the Bell Silver and Copper Mining Company, a corporation duly organized under and in accordance with the laws of the Territory of Montana, party of the first part, and Samuel Wells and Theodore H. Tyndale, both of Boston, Massachusetts, mortgagees and trustees, parties of the second part. Witnesseth, that whereas said party of the first part is authorized by the laws aforesaid, by its articles of incorporation, and by a vote of its trustees, to execute trust mortgages of all its property, real, personal, and mixed, to secure the payment of bonds issued by it; and, whereas the said party of the first part is about to issue sixty bonds, for the sum of one thousand dollars each, to secure a loan of sixty thousand dollars to be made to it—now, therefore, said party of the first part, in order to secure the payment of said bonds thus to be issued, and interest thereon, and in consideration of the sum of one dollar to it in hand paid by the said parties of the second part, at the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained and sold, transferred and conveyed, and by these presents does grant, bargain, sell, transfer, and convey to the said Samuel Wells and Theodore H. Tyndale, as trustees, and unto the survivor of them, and to their successors in the trust, and assigns, the following described property (then follows a description of the property as set out in the complaint), together with all the buildings, privileges, franchises, and

appurtenances to the same belonging. . . . . But this clause shall not be so construed as to prevent the said company from selling old materials in the ordinary course of the business, to be replaced by new; nor to prevent said company from mining, reducing, and selling ore from said mine, in the ordinary course of business, meaning and intending hereby to mortgage all the property of said company, real, personal, and mixed, of whatever name or nature, owned by the said party of the first part; . . . . but upon the following express trusts; that is to say, in case the said Bell Silver and Copper Mining Company shall fail to pay the principal, or any part thereof, which may fall due on said bonds, secured and intended to be secured thereby, at any time and place when and where the same may become due and payable, according to the tenor and effect thereof, and for thirty days thereafter; then in that case, upon the written request of the holders of one-fourth part of said bonds, and which may be at the time outstanding and unpaid, it shall be the duty of said parties of the second part, their successors or assigns, to enter upon and take possession of all and singular the premises, etc., or the said parties of the second part, their successors in said trust and assigns, at their discretion, may, and upon the written request of the holders of one fourth of said bonds then unpaid, shall cause the said premises and property to be sold at public auction in Butte City, Montana, or in the city of Boston, Massachusetts, as the parties of the second part, their successors and assigns, may deem best, first giving thirty days' notice of the time and place and terms of such sale, by publishing the same once a week for three weeks successively, in one of the principal newspapers, for the time being, in Boston, Massachusetts, and Butte City, Montana, and upon such sale to execute to the purchaser or purchasers thereof, good and sufficient deed or deeds of conveyance, in fee-simple for the same, which shall be a bar against the said Bell Silver and Copper Mining Company, party of the first part, its successors and assigns, and all persons claiming under it or them, of all right, interest, or claim in and to the said premises and property, and all parts thereof. And it is expressly agreed, that the parties of the second part, their successors and assigns, or any persons in their behalf, may purchase at any sale made as aforesaid, or at any sale made by order

of court, under the laws of Montana, and that no other purchaser shall be answerable for the application of the purchase money; and the said trustees shall, after deducting from the proceeds of any such sale, the costs and expenses thereof, and of managing the said property, and enough to indemnify and save themselves harmless from and against all liability arising from this trust, and their own compensation, apply so much of the proceeds of the said premises and property as may be necessary to the payment of the principal and interest of the said bonds unpaid, whether matured or not, and restore the residue, if any, to the party of the first part; it being expressly understood and agreed that in no case shall any claim or advantage be taken of any valuation, appraisement, redemption, or extension laws, by the said party of the first part, its successors or assigns; nor any injunction, or stay of proceedings, or any process be obtained or applied for by it or them to prevent such entry or sale, and conveyance as aforesaid." Then follow a number of agreements, which it is unnecessary for us to notice, and hence we do not encumber this opinion with a copy of them. It is further agreed that thereafter, on the twenty-fourth day of June, 1885, one Harriet M. Pitman, being then the owner of thirty-five of the bonds mentioned in the mortgage, which had been due more than thirty days, wrote said Wells and Tyndale a letter, directing them, in their discretion, to proceed and sell said premises, upon the terms described in the aforesaid instrument, and, further, that thereafter, on the fourteenth day of July, 1885, said bonds, all being past due and unpaid, the said Samuel Wells and Theodore H. Tyndale prepared and published a notice of sale, the substance of which, as to time, we will give in another portion of this opinion; that said notice was published in the Boston Traveler and in the Butte Miner; that said papers were newspapers of general circulation in the cities and vicinities, respectively, where they were published; that, in pursuance of said notice, on September 2, 1885, said Samuel Wells and Theodore H. Tyndale offered for sale to the highest bidder the property described in said notice, by virtue of their alleged authority in said instrument of date April 25, 1882, when the same was struck off to the holders of the bonds in said mortgage mentioned, for the sum of forty-five thousand dollars, they

then and there being the highest and best bidders. And thereafter, on the twelfth day of October, 1835, the said Samuel Wells and Theodore H. Tyndale made and delivered to the plaintiffs, the purchasers at said sale, a deed of the premises described in the complaint. This deed is the foundation of the action of ejectment, brought by the plaintiffs against the defendants, for the recovery of said premises. The defendants insist that it is void, and conveyed no title to the plaintiffs, for the reasons that (1) the notice of sale was not in conformity with the requirements of the contract; (2) the description of the property sold was insufficient in law; (3) the power or authority under which the mortgagees and trustees, Wells and Tyndale, executed the deed was void under section 371, page 161, of the Compiled Statutes of Montana.

We shall notice these objections in the reverse order of their statement above, for the reason that the last objection is the main one relied upon for a reversal of this case, and involves a question, not only of interest to the parties litigant in this case, but to the business public generally of this Territory. Said section 371 is as follows, to wit: "A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale." It is contended that the effect of this statute is to so completely modify the common law on the subject of mortgages of real property, that the mortgagor cannot convey the title to the mortgagee, or to third parties as trustees, so as to enable them, under the power thus given by the mortgagor, to sell the real property so conveyed, and cut off his equity of redemption, and that therefore all the power and authority which the aforesaid instrument purports to confer upon Wells and Tyndale, as mortgagees and trustees, to sell the said premises, and make the deed aforesaid to the purchaser, is void, and hence the deed itself is a nullity, and therefore the whole cause of action which rests upon it, on the part of the plaintiffs, must fail. This statute was taken from the California Practice Act of 1851, section 260, and was construed by the Supreme Court of that State long before its adoption by the legislature of this Territory. In the case of *McMillan* v. *Richards*, 9 Cal. 365, that court, in commenting upon the stat-

ute under consideration, says: "This section takes from the instrument its common-law character, and restricts it to the purposes of security. It does not, it is true, in terms change the estates at law of the mortgagor and mortgagee, but by disabling the owner from entering for condition broken, and restricting his remedy to a foreclosure and sale, it gives full effect to the equitable doctrine, upon a consideration of which the section was evidently drawn. An instrument which confers no right of either present or future possession, possesses little of the character of a conveyance, and can hardly be deemed to pass any estate in the land." And again, in *Koch* v. *Briggs*, 14 Cal. 265, that court says: "The deed in question not being a mortgage, the provisions of the two hundred and sixtieth section of the Practice Act can have no application." This was a case in which Briggs was indebted to Koch by promissory note, and, to secure the payment of it, executed to one Swift, as trustee, a deed of trust, containing the usual provisions for a sale upon default of payment, and for the application of a sufficient amount of the proceeds to pay the debt secured, and cost of sale, and the residue, if any, to the grantor. The court, holding this instrument to be a deed of trust, and not a mortgage, decided, as just stated, said section 260 had no application. The case of *Fogarty* v. *Sawyer*, 17 Cal. 589, was an action of ejectment, in which the defendant relied upon a deed executed by one Zimmerman, under a power of sale contained in a mortgage made by one Markwert to him, and the contention was, as in this case, that the deed was void under said section 260. The court, after quoting the statute in question, says: "Under the section, the mortgage creates a mere lien for the purposes of security, and, as in other cases of lien upon real property, can only be enforced by judicial proceedings, except by the authority of the owner of the property. By virtue of the mortgage alone, the mortgagee can neither acquire the possession nor dispose of the premises. But the existence of the mortgage does not prevent the owner from making an independent contract for the possession, or from authorizing a sale of the premises, the mortgagee consenting thereto, to pay off the debt. Nor is it perceived, that there is any legal obstacle to making such contract with the mortgagee, or to clothing him with the power of sale. If the owner

of the property sees fit to enter into such an arrangement with him, or to confer such power upon him, it would be going a great way for the court, for that reason alone, to invalidate the proceedings. The right to dispose, both of the possession and estate, follows necessarily from the ownership of the property; and this being so, no valid objection can be urged against incorporating the contract and power in the same instrument with the mortgage. They do not become, in that way, any part of the mortgage, but are as much independent of it, as though contained in separate instruments. Some stress is placed by the respondents upon the use of the words 'whatever its terms' in the statute. This language is supposed to prohibit separate stipulations between the parties for the possession, and for the sale of the premises, upon default. We do not thus construe the language, but, on the contrary, are clear that it was only intended to control the terms of grant, bargain, and sale generally employed in mortgages. . . . . We are of opinion that there is nothing in the law of mortgages in this State, which prevents the mortgagor from investing the mortgagee with a power to sell the premises, upon default in the payment of the debt secured, and when the sale is conducted in accordance with the conditions of the power, and is fairly made, a good title will pass to the purchaser, upon its consummation by a conveyance." (See, also, *Grant* v. *Burr*, 54 Cal. 298; *Bateman* v. *Burr*, 57 Cal. 480; *Durkin* v. *Burr*, 60 Cal. 360.) The Supreme Court of the United States, in the case of *Metropolitan Railroad Co.* v. *Moore*, 121 U. S. 558, lays down the rule, that where one legislature adopts a statute, in the same words, or substantially so, from another State, in which the courts have given such a statute a particular construction, it is adopted with such construction, and the courts of the State so adopting it are bound by it. Congress, in framing a new judicial system for the District of Columbia, adopted, in nearly the same words, the law of New York, which at the time had been construed by the highest court of said State. The Supreme Court of the District of Columbia had rejected this construction, and followed the old practice in said district, it being a question of practice; but the Supreme Court of the United States reversed it, and in doing so used the following language, to wit: "Instead of construing these new

statutory provisions in the light of the jurisprudence of Maryland, previously prevailing in the district in reference to this subject, we think that when Congress reorganized the judicial system of the district, by abolishing the old courts, and by establishing the present Supreme Court of the district, with its general and special terms, and adopted them from the legislation of New York, in substantially the same language, these provisions are to be construed in the sense in which they were understood, at the time, in that system from which they were taken.    In other words, we think that Congress adopted for this purpose the law of New York, as it was understood in New York." Judge Cooley, in his work on Constitutional Law, page 64, lays down the same rule, as follows, to wit: " And when a particular statute, or clause of the Constitution, has been adopted in one State, from the statutes or Constitution of another, after a judicial construction had been put upon it in such last-mentioned State, it is but just to regard the construction as having been adopted, as well as the words, and all the mischiefs of disregarding precedents would follow as legitimately here as in any other case." He sustains this view by the decisions of the courts of Massachusetts, New York, Illinois, Indiana, Mississippi, Michigan, Iowa, Wisconsin, Maine, Kansas, Nevada, and Virginia.    But he adds: "It does not necessarily follow that the prior decision, construing the law, must be inflexibly followed, since the circumstances in the State adopting it may be so different, as to require a different construction." It seems to be the rule, then, that the courts of the State of its adoption are bound by the construction of the statute given by the courts of the State where it was enacted, unless the circumstances of the people of the State, so adopting it, are so different, as to require a different rule.    Certainly, where the courts of a State have gradually developed a particular construction of a statute, and such construction has been of a number of years' standing, when the legislature of the other State or Territory adopts the statute, it must be proof quite conclusive of the legislative intent in so adopting it; and only circumstance of a very cogent nature would justify the courts in saying such was not the intention of the legislature.

We might rest this branch of the case here, especially in view

of the decision of the Supreme Court of the United States in the case of *Metropolitan Railroad Co.* v. *Moore, supra,* to which court this case is directly appealable. But we have been urged with great zeal by counsel for appellants to ignore the California decisions, and put the construction of our statute upon more advanced grounds; and it is also insisted that those decisions are not in harmony with the decisions of the Supreme Court of the United States. For these reasons we will examine the foundations of these decisions, and see whether they are sound and worthy to be followed. In order to arrive at a correct interpretation of the meaning of the legislature in passing an act, it is a familiar principle that the *status* at the time of the law to be affected must be looked to. It is to be borne in mind that, at common law, a mortgage was a conditional sale; that the title passed by the mortgage deed to the mortgagee, and upon the happening of the condition the sale became absolute, and the deed gave a right of entry, and would support an action of ejectment; that courts of equity, in process of time, looking to the spirit and intent of the parties rather than to the letter and form of their contract, came to treat a mortgage as a security for a debt, and held that the mortgagor should, even after forfeiture, be permitted to redeem his land by paying the debt secured, with interest; that, to remove this equity of redemption, which courts of chancery had by innovation ingrafted upon the law of mortgages, as it existed in the ancient common law, mortgagees resorted to the practice of filing bills in chancery, calling upon the mortgagor to redeem his property, or be forever closed or barred from asserting such right, and, upon his failure to do so by a day named, his right to redeem was by decree foreclosed, and the title made absolute in the mortgagee; that this strict foreclosure, as it is called, has, under the liberalizing influences of equity, almost entirely given way to the foreclosure by sale, in which the property mortgaged is regarded as a pledge or security for the debt merely, and a sale is decreed after condition broken, and the proceeds applied to pay the debt and cost of sale, and the remainder, if any, paid over to the mortgagor; that the cupidity of creditors, in order to defeat the equity of redemption, led them to make provisions in the mortgage deeds themselves, by which the mortgagor waived his

equity of redemption; that the courts of chancery held such provisions void as against public policy, and held that "once a mortgage, always a mortgage," and that the equity of redemption was irrevocable; and that the mortgagor could not denude himself of this right in the contract of mortgage; and if he subsequently parted with this right for an additional consideration, such contract would be closely scrutinized. Hence the right to foreclose after forfeiture, and the right to redeem, became mutual, reciprocal, and inseparable in a mortgage, and is made the *test* by some authorities by which the character of the instrument is determined, whether it is a mortgage or not. That courts of law yielded a reluctant, partial assent to these doctrines of equity, but up to the time of the adoption of said section 260 by the State of California, in July, 1851, had continued to hold in that State that, notwithstanding the mortgage was a security for a debt, and that the mortgagor was the owner of the property as to all the world except the mortgagee, still the mortgagee must be regarded as the owner, so far as it might become necessary to protect his rights as such; that this included the right to enter upon the possession of the mortgaged premises, and to receive the rents and profits, and apply them to the payment of his debt. Such is briefly the history of the law from ancient times, and its *status* at the time of the passage of the statute under consideration. The words commonly used in mortgages are those of bargain, sale, and conveyance used in absolute deeds, and in themselves purport to convey the title, and were subject to all the consequences at law of such conveyances, including the right to the possession, and it was to repeal this branch of the common law, and to "dig up by the roots," the last vestige of distinction between mortgages at law and in equity, that the act in question was passed. Hence it lays hold of the very words of bargain and sale, and declares that the mortgage shall not be deemed a conveyance, "whatever it terms," so as to enable the owner of the mortgage to recover possession, without foreclosure and sale. It declares a distinct public policy that the mortgagee shall not recover the possession of the mortgaged real property, except he becomes a purchaser at or after a foreclosure sale. It reduces the mortgage, for all purposes, to the rank of a mere security by way of pledge, or lien, for the

p iyment of the debt or performance of the duty or obligation undertaken, and thus consummates what equity had been struggling to accomplish for a long series of years. It follows that the provision in the deed in this case, by which the mortgagees and trustees were authorized to enter upon the possession of the premises conveyed, was void. But no question arises out of this provision, as they did not enter into possession, or demand possession, until after sale under the provisions of the deed.

But we are met with the contention that the power of sale contained in said deed is void under the provisions of our legislative act, and that the words "foreclosure and sale" mean a sale under a judicial decree, and that a sale under a power created by a contract between the parties is not such a "foreclosure and sale" as is contemplated by the statute. This position is attempted to be met in part, by asserting that the deed in question is not a mortgage, but a deed of trust, and our statute contained in said section 371 does not apply to it, as held in the case of *Koch* v. *Briggs, supra.* While the exact boundary between mortgages with powers of sale, and deeds of trust, are not very clearly defined, we think the deed in question should be classed with the former. It is a security for a debt; it provides that the mortgagor shall continue in possession, and in extracting and selling ores, etc.; and declares that the meaning and intent is to mortgage the property, and one of the mortgagees and trustees is the owner of part of the bonds secured, and therefore a creditor. But from the view we take of it we do not think it important to determine to which class it technically belongs. Mr. Perry, in his work on Trusts (vol. 2, p. 163, § 602 *d*), says: "Mortgages containing powers of sale, and deeds of trust, to secure a debt due to a creditor, are substantially the same thing at law and equity. At law both kinds of deeds purport to convey the legal title to the grantee, or creditor, or trustee; but in equity the land, the title, and the deeds stand for security of the debt. The debt is the principal thing, and the conveyance of the land is collateral to the debt. The mortgagor in both cases has an estate in the land, called an 'equity of redemption.' If he fails to pay the debt, his equity of redemption is barred upon due proceedings had; but if the

debt is paid at any time before his equity is defeated by the steps appointed to be taken, it becomes absolute, and he is entitled to a reconveyance or a discharge of the mortgage, as the case may be. In some circumstances a discharge of the mortgage upon payment or a reconveyance is not material, as, by the terms of the mortgage, and by the law, it becomes null and void. A mortgage is a pledge or security for a debt, whatever may be the form which the transaction takes, whether a simple mortgage deed in form, or a mortgage with a power of sale, or a deed in trust, or a deed absolute on its face, accompanied by an agreement in writing to reconvey or to sell, or to do any other thing upon the payment of a certain sum of money. Courts of equity look upon it as a mortgage, and deal with it as such." Inasmuch, then, as it is a mortgage with a power of sale, is such power of sale void? We think not. And we think a mortgage may be foreclosed by a sale under such power. Bouvier defines a foreclosure to be a "proceeding in chancery by which the mortgagor's right of redemption of the mortgaged premises is barred or closed forever." This was the meaning of the word as used in the ancient law of strict foreclosure; and when the sale under decree took its place, and a time was fixed for redemption (usually six months), it was also called a "foreclosure," for the right to redeem was equally barred or closed forever. But the term has a wider meaning still in our law of mortgages. Perry, in his work on Trusts (vol. 2, p. 194, § 602 *gg*), says: "These powers of sale in mortgage deeds do not change their character as mortgages, but the powers of sale are superadded to mortgages. It is a cumulative power of foreclosure, and if the mortgagee does not choose to exercise the power, he may foreclose the mortgage by any of the other methods provided by law." Again, in Jones on Mortgages (vol. 2, § 1773), it is laid down that "generally a power of sale does not affect the right to foreclose in equity, either by a strict foreclosure, or by a judicial sale, or to foreclose in any way provided by statute for the ordinary foreclosure of mortgages, as by entry and possession, or by suit at law. The power is merely a cumulative remedy. It is one species of foreclosure, but it does not exclude jurisdiction in equity. The option, however, to proceed in equity lies wholly with the mortgagee. A resort to

a court of equity is not necessary except where made so by statute. It can be effectually exercised without the aid of the courts. Even after the filing of a bill in equity to foreclose such a mortgage, and while the bill is pending, a sale may be made under the power." (See, also, 2 Jones on Mortgages, § 953; *Blackwell* v. *Barnett*, 52 Tex. 333.) Chancellor Kent says: "The sale under a power, if regularly and fairly made, according to the direction of the statute, is a final and conclusive bar to the equity of redemption." The effect of a sale under a power is to cut off the equity of redemption, but this does not make the power a contract against the right to redeem after condition broken, and thus to violate fundamental principles in regard to mortgages; but such right exists until a sale is made either by decree of court or under the power of sale. Mr. Washburn, in his work on Real Property (vol. 2, p. 80), says: "The insertion of a power of sale in a mortgage deed does not change it, or affect the mortgagor's right to redeem, so long as the power remains unexecuted, and the mortgage is not, as it may be, foreclosed in the ordinary manner. . . . . But when the sale has been made, the interest of the mortgagor is wholly divested, including his equity of redemption." Again, he says: "The terms of the deed fix the rights of the grantor as to redemption of the estate, as well as the rights and duties of the trustee in doing what answers to a foreclosure of the same by a sale of the premises." But we need not multiply instances in which the word "foreclosure" is used to denote a sale of the mortgaged property under a power of sale, and that it is a foreclosure, because it as effectually bars the equity of redemption as a decree in chancery. We know of no authority to the contrary. But it is urged that our statute arrests the effect of the words of conveyance, so that they pass no title, and there is no interest in the mortgagee to which such power of sale can attach. In other words, that the effect of the statute is to prevent the title from passing to the grantee, and hence there can be no power to sell conferred upon him, or a third person, and any effort to do so is void. It will be observed that the statute does not in express terms repeal the common law in this respect. It only says that it shall not be deemed a conveyance, in such sense, as to entitle the mortgagee to possession without foreclosure and sale. It

does not prohibit the mortgagor from conveying the title for the purposes of a foreclosure by sale upon condition broken. The power being no part of the mortgage, but a separate contract, looking to a foreclosure and sale, if there is a default, may, so far as we can see, vest the title in the mortgagee for this purpose. There is nothing in the statute that forbids it. But the mortgagee has an interest in the land mortgaged. He has a lien upon it for the security of his debt, and this will support the power of sale, and so couple it with an interest in the land that it becomes a part of the security, and irrevocable. In the case of *Calloway* v. *Bank*, 54 Ga. 441, Judge McCay, in speaking for the court, says: "Neither this court nor the Code has said that the mortgagee has no interest. The language is, it passes no title. . . . . It must be noticed that our Code does not negative any limitation or right which the parties may put in a mortgage. It simply defines what a mortgage is, and says, a mortgage, to wit, a contract containing the terms specified conveys no title. It does not say that the parties may not add to these terms other terms; that they may not stipulate who shall have the possession, and how the pledge may be enforced. The truth is, nothing more was intended, as we have said, than to declare that in this State a simple mortgage was not a title on condition, as it was held in the English common-law courts, but that it was what the English Chancery Court held it to be, a security, a pledge for the payment of money or other liability; what, indeed, it in fact is, even in England, since the mortgagor may always make it this by appeal to the Chancery Court. . . . . Nor is there anything to prevent a power of sale. That is more than a mortgage, and does not come within the definition. We see nothing in the Code to limit the power of contracting as is contended for. Men have a right to do with their own as they will, and the law ought not to be construed to limit that right, unless it be very plain. *Consensus facit legem* is one of the most ancient and universal maxims of the law, since it is not the object of society to limit men in the disposition they see fit to make of their own property, unless some decided public good is to be attained." Thus we see that, under the Code in Georgia, no title passed by a mortgage; but still it was held in the above able opinion that a valid power of sale may be made.

As there is nothing in our statute prohibiting the execution of a power of sale, what principle of public policy does it contravene? We do not know of any. Mr. Jones, in his work on Mortgages, section 1764, says: "The delay and expense incident to a foreclosure and sale in equity have brought power of sale mortgages and trust deeds into general favor, both in England and America, and although their general use is now confined to a part only of our States, the same influences which have already led to their adoption and use heretofore are likely to lead to their general use everywhere at an early day. . . . . A power of sale, whether vested in the creditor himself or in a trustee, affords a prompt and effectual security. Although it may press harder upon the debtor, in point of time, it is not without its advantages to him. The delay and expense incident to a foreclosure suit, he is obliged to pay for in some way, and it is generally in the way of paying a higher rate of interest for the loan." In commenting upon this same subject, the Supreme Court of Mississippi says: "The evil of the former mode of mortgaging is that the mortgagee, in proceeding to the recovery of his money, is liable to be delayed for an indefinite term in chancery. The new mode is framed with a view to a settlement out of court. The principal objection in this mode of security to a mortgagor is, that in one or two months he may be bereft of his property, perhaps an endeared residence, without ample opportunity being given for the disposal of it to the best advantage. . . . . But it is believed that, on a candid view of the circumstances, the justice of the case will be found nearly equal. The mortgagor must raise money. Now, if he cannot borrow, he must sell. To save the pain of a sale, which rarely coincides with the wants and views of the seller, he allays his necessities by a loan. How, then, at a future period can he complain of the hardship of a sale, when he has had the interval to make his bargain in, and when, be it observed, he receives the product of the sale after payment of the debt and costs? Under this view of the subject, it is conceived that there is really nothing harsh or unjust towards the mortgagor in this mode of mortgaging, with powers of sale vested in a trustee; and it is believed that the guiding principle in reviewing transactions of this nature should be rather to afford facilities for the accomplishment of

the intention of the parties, than to oppose or obstruct that intention by dilatory precautions and impediments." We think, then, that in upholding mortgages with powers of sale we are laying the foundations of a wise public policy. In a new country, full of great natural resources, and requiring large capital to develop them, every facility allowed parties by their own contracts to collect money loaned on mortgages, without the delays, often vexatious, of a resort to courts, certainly will have a tendency to lower the rate of interest, and make money more readily obtainable. It will also have tendency to make real estate a collateral, and as such available for the purpose of securing loans as well as stocks and bonds. We think the California construction of our statute the correct one. There is nothing in the decision of the Supreme Court of the United States that is inconsistent with the foregoing views. We are referred to the case of *Teal* v. *Walker*, 111 U. S. 242. This case was an action to recover rents and profits accruing while the mortgagor was in possession. The deed stipulated that, upon notice, the mortgagee should have possession; but the mortgagor refusing, the mortgagee foreclosed in court, and then sued for the rents and profits. The court held that the Oregon statute, which is substantially the same as ours, created a public policy in relation to possession, and that such stipulation was void, and that recovery could not be had if there was no such provision of the statute, for the mortgagor in possession holds as owner, and not as receiver for the mortgagee. There is nothing in this case that touches the case at bar. If the mortgagees and trustees had undertaken to enter into the possession of the premises, without foreclosure and sale, then this case would have been directly in point. The case of *Shillaber* v. *Robinson*, 97 U. S. 75, is an authority which sustains our views in holding that the deed in this case is a mortgage with a power of sale, and that it may be either foreclosed under the power, or by decree of court. Justice Miller, through whom the opinion of the court was rendered, says: "If there is a power of sale, whether in the creditor or in some third person, to whom the conveyance is made for that purpose, it is still, in effect, a mortgage, though in form a deed of trust, and may be foreclosed by sale in pursuance of the terms in which the power is conferred, or by suit in chan-

cery." The contention in that case was that, if the deed was a mortgage, the requisite notice had not been given as required by law in its foreclosure and sale. The case of *Peugh* v. *Davis*, 96 U. S. 337, contains nothing inconsistent with the views herein expressed. In that case Justice Field, who delivered the opinion of the court, held, as we have done, that the equity of redemption is inseparably connected with a mortgage; that it cannot be waived in the same instrument that creates the mortgage, etc.; but the question did not arise, nor was it discussed, as to the validity of a power of sale, and its efficacy as a mode of foreclosure. The only thing decided in the case of *Fee* v. *Swingly*, 6 Mont. 596, was that the parties to a mortgage might make a contract after the mortgage had been made, by which the mortgagee might go into possession, and take the rents and profits, and apply them to the payment of his debt. This in no way affects the question in this case, in which there has been a foreclosure and sale, and the plaintiffs seek to recover the possession as purchasers at the foreclosure sale. Indeed, we know of no authority, where there is no statute regulating the matter, which holds that a power of sale in a mortgage is void, unless it be that Judge Brewer is right in the case of *Wheeler* v. *Sexton*, 34 Fed. Rep. 154, decided in the Circuit Court of Nebraska, March, 1888, in which he holds that the Supreme Court of that State has held powers of sale in mortgages invalid, for the reason that such court, in a number of cases scattered through several years, has given utterance to *dicta* to that effect, and he held such a power invalid for the reason that he was bound by the decisions of the State court.

2. It is insisted by the appellants, that the description contained in the notice of sale is not sufficient. By reference to the transcript, we find that said description was an exact copy of the description of the property contained in the mortgage, and whatever may be said as to its sufficiency in regard to the personal property, it certainly cannot be contended that it does not describe the real property with great particularity; and inasmuch as this controversy, which is an action of ejectment, is in regard to the realty, we do not think there is anything in this objection. Besides, the description in the notice as to the personalty is as full as in the mortgage.

3. The appellants further contend, that the notice of sale was not given by the mortgagees and trustees, as required by the power of sale. It provides for notice in the following language, to wit: "First giving thirty days' notice of the time and place and terms of such sale, by publishing the same once a week, for three weeks successively, in one of the principal newspapers for the time being in Boston, Massachusetts, and Butte City, Montana." The agreed facts show that the notice was published on the fifteenth, twenty-second, and twenty-ninth days of July, 1885, in the Boston Traveler, and the Butte Daily Miner on the twenty-first day of July, and each succeeding day to and including the eleventh day of August, 1885, and the sale took place on the second day of the following September. There is no controversy, but that the publication in the Boston Traveler was sufficient, as the last publication was thirty days before the day of sale; but the last publication in the Daily Miner being on the eleventh day of August, and the sale on the second day of September, only twenty-two days intervened between the last publication and the day of sale, and it is contended that it was not a compliance with the requirements of the power of sale. We think it was. We do not think the position of the appellants is tenable. It proceeds upon the idea that there is no notice until all three of the publications have been made, and that then, and only then, there is notice. But certainly the first publication is notice, as much as the second or last. If there had been no length of time specified, and the requirement had been that there should be first given thirty days' notice of the time and place of sale, then the notice should have been published each succeeding week, for and including the fifth week, in order to give the requisite thirty days' notice, as was held in the case of *Leffler* v. *Armstrong*, 4 Iowa, 482. The giving of thirty days' notice of the time and place of sale would have been accomplished by publishing the notice thirty days before the day of sale, and keeping the publication alive during that period. But in the mortgage in this case, a provision is made for the length of time that the notice shall be kept alive, to wit, for three weeks, by repeating the first publication, the second and third weeks successively thereafter. The very language of the provision is: "First giving thirty days' notice, by publish-

ing the same once a week for three weeks successively," etc. The only force and effect of the latter provision is to define the extent of the notice, by directing the number of times that it should be published. It does not require that the whole publication shall be completed thirty days before the day of sale. The requirement is that notice shall be given thirty days before, and inasmuch as the first publication is notice, then the requirement is met if thirty days intervene between the time of the first publication and the day of sale. The case of *Bussey* v. *Leavitt*, 12 Me. 378, is not in point. In that case, under the statute of Maine, a notice was required to be published for three weeks successively. By a subsequent amendatory act, it was provided, that the three weeks' publication required by the previous act must be "so" published, three months prior to the day of sale. While it was correctly held, that the publication must be completed three months before the day of sale under that statute, it manifestly appears that that was the meaning of the statute by the use of the word "so," referring to the publications for three weeks. We find, then, after a careful consideration of all the questions raised in this case, that there was no error, and the case must be affirmed.

*Judgment affirmed.*

BACH J., DE WOLFE J., and LIDDELL J., concur.